Mary Jane Ruderman HIRSCHEY,
Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Long Lake Energy Corporation,
Intervenor.

No. 82–2170.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 25, 1983.

Decided Feb. 25, 1983.

As Amended Feb. 25, 1983.

William J. Kenney, Washington, D.C., for petitioner.

Andrea Wolfman, Atty., F.E.R.C., with whom Barbara J. Weller, Deputy Sol., F.E.R.C., Washington, D.C., was on brief, for respondent.

Ann L. Rasenberger, with whom Marvin S. Lieberman, Washington, D.C., was on brief, for intervenor.

Before EDWARDS and SCALIA, Circuit Judges, and VAN DUSEN,[*] Senior Circuit Judge, United States Court of Appeals for the Third Circuit.

Opinion for the Court filed by EDWARDS, Circuit Judge.

HARRY T. EDWARDS, Circuit Judge:

Petitioner Mary Jane Ruderman Hirschey seeks review of a Federal Energy Regulatory Commission ("FERC" or "Commission") order vacating her exemption from the licensing requirements of the Federal Power Act, 16 U.S.C. §§ 791a to 825r (1976 & Supp. V 1981) ("FPA" or "Act"). Because, on the facts of this case, the FERC had no authority to vacate petitioner's exemption, we reverse.

## I.

### A.

Under part I of the FPA it is "unlawful for any person, . . . for the purpose of developing electric power, to construct, operate, or maintain any dam, water conduit, reservoir, power house, or other works incidental thereto across, along, or in any of the navigable waters of the United States, . . . except under and in accordance with the terms of . . . a license granted pursuant to [the Act]." 16 U.S.C. § 817 (1976). Congress has authorized the FERC to exempt certain small hydroelectric projects from the licensing requirements imposed by this provision. Under section 405(d) of the Public Utilities Regulatory Policies Act of 1978, "[t]he Commission may in its discretion (by rule or order) grant an exemption in whole or in part from the requirements (including the licensing requirements) of part I of . . . the [FPA] to small hydroelectric power projects having a proposed installed capacity of 5,000 kilowatts or less . . . ." 16 U.S.C. § 2705(d) (Supp. V 1981) ("PURPA").

Pursuant to the PURPA, the FERC has adopted regulations setting forth procedures governing exemption applications. Applications are first reviewed by the FERC for compliance with filing requirements. *See* 18 C.F.R. §§ 4.105(b), 4.31(c)–(g) (1982). When the FERC determines that an application is complete, the applicant is notified that it has been accepted for filing. *See id.* § 4.31(c)(1). The Commission then issues public notice of the filing and invites protests, petitions to intervene, or competitive proposals. *See id.* § 4.31(c)(2). An application is deemed approved and granted 120 days after its acceptance for filing if within that period the Commission takes no action affirmatively to grant the exemption in whole or in part, deny the exemption, or suspend operation of the 120-day rule.[1] Once an application

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. V 1981).

[1]. (4) *Automatic exemption.* If the Commission has not taken one of the actions set forth in paragraph (b)(5) of this section within 120 days after notifying the applicant that its application for exemption from licensing is accepted for filing, exemption of the project, as proposed, will be deemed to be found consistent with the public interest and granted, on the standard terms and conditions set forth in § 4.106.

(5) *Affirmative action on exemption.* Within 120 days after notifying an applicant that its application for exemption from licensing is accepted for filing, the Commission may take any of these affirmative actions:

(i) Grant the exemption as requested;

(ii) Grant an exemption from provisions of Part I of the Federal Power Act (and the regulations issued under those provisions) other than those for which exemption was requested, upon finding that modification of the exemption requested is in the public interest;

for an exemption has been granted, the decision is final subject only to rehearing procedures. *See id.* § 1.30(d) (1982). Any party may petition for rehearing within 30 days after an application has been granted, *see id.* § 1.34 (1982); however, if a petition for rehearing is not filed within 30 days, the exemption grant becomes nonreviewable.[2]

#### B.

Petitioner is one of several developers seeking to build hydroelectric power plants along a stretch of the Black River in New York State. Petitioner and three other developers have proposed to construct small projects that would involve renovation of existing hydroelectric sites. The remaining developer, Long Lake Energy Corporation ("Long Lake"),[3] has proposed to build a large project that would involve the use of a dam upstream from the other proposed sites. While the small projects could all be operated compatibly with one another, operation of the Long Lake project would lower the river's water level downstream and thus foreclose simultaneous operation of the small projects.

Petitioner filed an application for a licensing exemption on December 16, 1981. The FERC accepted the application on February 5, 1982, notifying petitioner that, under the automatic grant rule, her application would be deemed granted if no action were taken on it within 120 days. Thereafter, the FERC took no action to grant or deny the application or to suspend operation of the 120-day rule. Petitioner's application was thus automatically granted on June 7,

1982, and as of that date a petition for rehearing could have been filed. Although Long Lake had a competitive application on file with the FERC, neither Long Lake nor any other party filed a petition for rehearing to contest the automatic grant of petitioner's application. Since no petition for rehearing was filed, petitioner's exemption became nonreviewable on July 7, 1982.[4]

On July 20, 1982, the FERC, *sua sponte,* issued an order vacating petitioner's exemption. The FERC asserted that it had inadvertently failed to suspend operation of the 120-day rule on petitioner's application; the FERC claimed, further, that because several competing applications for authority to construct hydroelectric projects along the same stretch of the Black River had been filed, a comparative evaluation of all of the applications would have to be undertaken. The Commission thus justified vacating petitioner's exemption as necessary to return matters to the *status quo ante* so that a comparative evaluation could be achieved.

This petition for review followed.

#### II.

#### A.

■ The FERC argues that there are two statutory bases supporting its vacation of petitioner's exemption. First, the Commission relies on section 313(a) of the FPA, which grants the FERC the power to modify or set aside any finding or order at any time until the administrative record is filed in a court of appeals.[5] But in *Pan Ameri-*

---

(iii) Deny exemption [sic] if granting the exemption would be inconsistent with the public interest; or

(iv) Suspend the 120-day period for action under this paragraph, upon finding that additional time is necessary for gathering additional information, conducting additional proceedings, or deliberating on the issues raised by the application.

18 C.F.R. § 4.105(b).

2. Under the Act, judicial review is unavailable on FERC orders that have not first been presented to the Commission by petition for rehearing. *See* 16 U.S.C. § 825*l* (1976).

3. Long Lake has intervened as a respondent in these proceedings.

4. There is no claim of justification for the failure to seek rehearing. *See* note 2 *supra.*

5. Until the record in a proceeding shall have been filed in a court of appeals, ... the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this [Act].
16 U.S.C. § 825*l* (a) (1976).

can *Petroleum Corp. v. FPC,* 322 F.2d 999 (D.C.Cir.), *cert. denied,* 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963), this court made it clear that, under section 313(a), the Commission only has the "power to correct an order . . . until such time as the record on appeal has been filed with a court of appeals *or the time for filing a petition for judicial review has expired." Id.* at 1004 (emphasis added). The time for judicial review in this case expired on July 7, the final date for filing a petition for rehearing. Thus, section 313(a) provides no authority for the FERC's action in this case.

Second, the FERC cites section 309 of the FPA, which grants the Commission "power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of [the Act]." But it is plain that section 309 has no application under the circumstances of this case. The general authority of section 309 does not empower the FERC to vacate final and nonreviewable license exemptions. To imply such authority from section 309 would make a sham of the carefully crafted license exemption regulations and render superfluous the *specific* revocation procedures set forth in 18 C.F.R. § 4.106.[6]

In several important respects, this case is analogous to *United States v. Seatrain Lines, Inc.,* 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396 (1947), where the Interstate Commerce Commission, *sua sponte,* revoked a water carrier's certificate of public convenience under a statutory provision allowing the Commission to "suspend, modify, or set aside its orders." On review, the Supreme Court held that

> [i]t is clear that the "orders" referred to in [the Interstate Commerce Act] . . . are formal commands of the Commission relating to its procedure and the rates, fares, practices, and like things coming within its authority. But . . . while the procedural "orders" antecedent to a water carrier certificate can be modified from time to time, the certificate marks the end of that proceeding.

*Id.* at 432, 67 S.Ct. at 439 (footnote omitted). Likewise, in this case the grant of exemption marks the end of the application proceeding. Thus, the conclusion reached in *Seatrain* is equally applicable here. "The [exemption] . . . , when finally granted and the time fixed for rehearing it has passed, is not subject to revocation in whole or in part except as *specifically* authorized by Congress. Consequently, the Commission was without authority to revoke . . . [the exemption] . . . ." *Id.* at 432–33, 67 S.Ct. at 439 (emphasis added).

Furthermore, this is not a case in which the FERC has acted to correct some *ministerial* error. *Cf. American Trucking Associations, Inc. v. Frisco Transportation Co.,* 358

---

**6.** Any case-specific exemption from licensing granted for a small hydroelectric power project is subject to the following standard terms and conditions:

(a) *Article 1.* The Commission reserves the right to conduct investigations under sections 4(g), 306, 307, and 311 of the Federal Power Act with respect to any acts, complaints, facts, conditions, practices, or other matters related to the construction, operation, or maintenance of the exempt project. If any term or condition of the exemption is violated, the Commission may revoke the exemption, issue a suitable order under section 4(g) of the Federal Power Act, or take appropriate action for enforcement, forfeiture, or penalties under Part III of the Federal Power Act.

. . . .

(c) *Article 3.* The Commission may accept a license application submitted by any qualified license applicant and revoke this exemption if actual construction or development of any proposed generating facilities has not begun within 18 months, or been completed within four years, from the date on which this exemption was granted. If an exemption is revoked, the Commission will not accept a subsequent application for exemption or a notice of exemption from licensing within two years of the revocation.

18 C.F.R. § 4.106 (1982).

We also note that the Commission, in revoking petitioner's exemption, did not purport to amend or rescind any order, rule or regulation. The regulation under which petitioner's exemption was granted still remains in full force and effect. *See* note 1 *supra.*

U.S. 133, 145, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958) (Interstate Commerce Act enabling clause construed to permit ICC's correction of inadvertent ministerial errors in licenses long after close of licensing proceedings). Indeed, the FERC does not even claim that the asserted error—failure to engage in a comparative evaluation of competing applications—was ministerial in nature. All that can be found here is that petitioner's application was automatically granted by virtue of Commission inaction with respect to a purely discretionary matter.

The FERC can point to nothing in the relevant statutes or regulations, or in any proven agency practice, that *requires* comparative evaluation of mutually exclusive applications for exemptions. Although 18 C.F.R. § 4.104(e)(2)[7] contemplates the filing of competing applications, that provision simply provides that the first filed application will be favored *unless* the FERC *affirmatively finds* that the later filed application is measurably better. Section 4.104(e)(2) is thus perfectly consistent with the automatic grant procedure governing exemption applications; in cases where the FERC does not, within 120 days, find that a later filed application is better (or act to stay the matter for future determination), section 4.104(e)(2) establishes a priority system that automatically results in the granting of the first filed exemption application without any comparative evaluation. Thus, under the FERC's own rules, petitioner's first filed application was validly granted by operation of law without formal comparative evaluation; and since the decision whether to engage in comparative evaluation is a matter of discretion, the failure to engage in such evaluation is not the type of error that is correctible under section 313(a) or 309 once the time for judicial review has expired.

Accordingly, finding no legitimate basis for the FERC's asserted authority, we hold that the FERC acted without statutory authorization in vacating petitioner's exemption.

### B.

■ Both petitioner and Long Lake lay claim to the equities in this case. Petitioner claims detrimental reliance on the grant of the exemption once it became final and nonreviewable, and Long Lake claims detrimental reliance on a presumed evaluation of competing applications by the FERC. In our view, there can be no doubt but that the equities favor petitioner. The Commission gave public notice that petitioner's application was accepted for filing on February 5, and Long Lake knew or should have known that—absent any affirmative action from the Commission within 120 days—petitioner's application would be granted automatically on June 7. No such affirmative action having been taken, Long Lake could have challenged the automatic grant of petitioner's exemption by filing a petition for rehearing within 30 days of June 7. It failed to do so.

Additionally, although Long Lake may have anticipated a comparative evaluation of competing claims, this was at best an unjustified and self-serving expectation. There is nothing in any statute, regulation or proven Commission practice to indicate that petitioner's application could not be granted without a comparative evaluation. Thus, whatever Long Lake may have assumed, petitioner certainly should not bear the brunt of a competitor's plainly mistaken beliefs.

### C.

We are convinced not only of the validity of petitioner's claim, but also that the result in this case will further the long term inter-

---

**7.** If an application for a license and an application for exemption from licensing are each accepted for filing and each propose [sic] to develop a mutually exclusive project, the Commission will favor the application first filed, unless the Commission determines the plans of the subsequent applicant would better develop the water power potential of the affected water resources.
18 C.F.R. § 4.104(e)(2) (1982).

ests of the FERC, exemption applicants and the public. There is a strong interest in repose under any regime of legal rules. And particularly in this context—given the expense of developing hydroelectric projects —applicants, other potential investors and lending institutions must be able confidently to rely on the predictability of the FERC's procedural rules. To sustain the sudden reversal of a final and nonreviewable FERC decision on nothing more than an

**8.** We emphasize that neither in this case nor in any other case will our decision bind the FERC irrevocably to exemptions under the 120-day rule. The FERC retains power to vacate any exemption for violation of terms upon which the exemption was granted. *See* 18 C.F.R. § 4.106(a), (c).

*assertion* of inadvertent error would run contrary to these important interests.[8]

## III.

For the foregoing reasons, we reverse the FERC's order vacating petitioner's license exemption. The case is remanded to the FERC with instructions to reinstate the license exemption.

*So Ordered.*

Furthermore, all parties acknowledge that the FERC may yet approve the Long Lake project if Long Lake is prepared to pay petitioner for certain water flow rights and compensation for her investment losses. FERC Brief 21–24; Intervenor's Brief 4–5.