737 F.2d 1159
 238 U.S.App.D.C. 12
 INTERNATIONAL PAPER COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Long Lake Energy Corporation, New York State Department of
Environmental Conservation, Intervenors.
 No. 83-2032.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 9, 1984.
Decided June 22, 1984.
 
 John W. Gulliver, Portland, Maine, with whom Thomas R. Doyle, Portland, Maine, was on the brief, for petitioner.
 Arlene Pianko Groner, Atty., F.E.R.C., Washington, D.C., with whom Stephen R. Melton, Acting Gen. Counsel, and Barbara J. Weller, Deputy Solicitor, F.E.R.C., Washington, D.C., were on the brief, for respondent.
 Marvin S. Lieberman, Washington, D.C., with whom Ann L. Rasenberger, Washington, D.C., was on the brief, for intervenor, Long Lake Energy Corp.
 Robert Abrams, New York City, and N.P. Wardwell, Watertown, N.Y., were on the brief, for intervenor, New York State Dept. of Environmental Conservation. Charles W. Garrison, Washington, D.C., also entered an appearance for intervenor, New York State Dept. of Environmental Conservation.
 Before MIKVA, BORK and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge BORK.
 BORK, Circuit Judge:
 
 
 1
 International Paper Company seeks review of a Federal Energy Regulatory Commission order vacating two exemptions from the hydroelectric licensing requirements of the Federal Power Act, 16 U.S.C. Secs. 791a-825r (1982). Because we find the Commission had no authority to vacate the exemptions, we reverse.
 
 I.
 A.
 
 2
 This court explained the procedure by which certain hydroelectric projects are exempted from the licensing requirements of the Federal Power Act in Hirschey v. FERC, 701 F.2d 215 (D.C.Cir.1983). Part I of the Federal Power Act makes it unlawful for any person, "for the purpose of developing electric power, to construct, operate, or maintain a dam ... across, along, or in any of the navigable waters of the United States, ... except under and in accordance with the terms of a ... license granted pursuant to [the Act]." 16 U.S.C. Sec. 817 (1982). But FERC may relieve hydroelectric projects below a certain size from the Act's requirements. Section 405 of the Public Utilities Regulatory Policy Act of 1978, 16 U.S.C. Sec. 2705 (1982), allows the Commission, by rule or order, to "grant an exemption ... from the requirements (including the licensing requirements) of Part I of the [Act] to small hydroelectric power projects having a proposed installed capacity of 5,000 kilowatts [5 MW] or less...." 16 U.S.C. Sec. 2705(d) (1982).
 
 
 3
 The exemption procedures are governed by regulation. Applications are initially reviewed by the Commission staff to ensure compliance with the filing requirements. 18 C.F.R. Secs. 4.105(b), 4.31(c)-(g) (1983). If the filing is in compliance, the Commission notifies the applicant that its application has been accepted for filing. 18 C.F.R. Sec. 4.31(c)(1). Acceptance for filing does not preclude the Commission from later rejecting the application; however, it does indicate that the applicant has conformed to the Commission's rules for exemption applications.
 
 
 4
 FERC then gives public notice of the filing and invites protests, petitions to intervene, or competitive proposals. 18 C.F.R. Sec. 4.31(c)(2). Under its own rules, the Commission has 120 days to act on an application for an exemption. Unless the Commission affirmatively acts to grant the exemption in whole or in part, deny the exemption, or to suspend the 120-day rule, the application is automatically "deemed to be found consistent with the public interest and granted." 18 C.F.R. Sec. 4.105(b)(4)-(5).[1]
 
 
 5
 That decision is final unless a rehearing is allowed. Any party may petition for rehearing within 30 days after the grant of an exemption; if no rehearing petition is timely filed, however, the exemption grant becomes unreviewable. 16 U.S.C. Sec. 825 l (1982).[2]
 
 
 6
 Commission rules also provide that where mutually exclusive license applications are filed, the first-filed applicant will be favored "unless the Commission determines the plans of the subsequent applicant would better develop the ... affected water resources." 18 C.F.R. Sec. 4.104(e)(2) (the "first-in-time" rule). Notwithstanding FERC's representation to the contrary, see Brief for Respondent at 21-24, this rule does not mandate a comparative evaluation of the competing applications, Hirschey, 701 F.2d at 219; the decision to engage in formal comparative evaluation is a "purely discretionary matter." Id.
 
 B.
 
 7
 In Hirschey, petitioner had applied for, and received, a license exemption pursuant to the automatic exemption rule. Although no party had sought rehearing, the Commission sua sponte vacated the exemption. FERC asserted that it had inadvertently failed to suspend the 120-day rule and that because mutually exclusive applications had been filed, a comparative evaluation of the competing proposals was required. According to the Commission, vacating Hirschey's exemption was therefore necessary. 701 F.2d at 217.
 
 
 8
 On appeal, FERC contended that it had authority to vacate petitioner's exemption under sections 313(a) and 309 of the Federal Power Act.[3] The court rejected these contentions. Section 313(a), the court said, gave the Commission power to correct its orders before the record on appeal had been filed or " 'the time for filing a petition for judicial review ha[d] expired.' " 701 F.2d at 218 (emphasis in original) (quoting Pan American Petroleum Corp. v. FPC, 322 F.2d 999, 1004 (D.C.Cir.), cert. denied, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963)). Because the time for seeking appellate review had expired, the court held that "section 313(a) provide[d] no authority for the FERC's action ...." Id.
 
 
 9
 Resort to section 309 was equally unavailing. That section, the court found, simply had no application to this case:
 
 
 10
 The general authority of section 309 does not empower the FERC to vacate final and nonreviewable license exemptions. To imply such authority from section 309 would make a sham of the carefully crafted license exemption regulations and render superfluous the specific revocation procedures set forth in 18 C.F.R. Sec. 4.106.
 
 
 11
 701 F.2d at 218 (emphasis in original) (footnote omitted).
 
 
 12
 According to the Hirschey court, "the grant of exemption marks the end of the application proceeding." 701 F.2d at 218. While FERC had statutory authority to act upon the application--even to reject it--within the 120-day period, when the Commission did not act within the relevant time, "petitioner's application was automatically granted by virtue of Commission inaction with respect to a purely discretionary matter." Id. at 219. The opinion's conclusion as to the Commission's power to vacate an exemption was unequivocal:
 
 
 13
 The exemption, when finally granted and the time fixed for rehearing it has passed, is not subject to revocation in whole or in part except as specifically authorized by Congress. Consequently, the Commission was without authority to revoke the exemption.
 
 
 14
 Id. at 218 (emphasis in original) (citations omitted).
 
 
 15
 Hirschey rejected the Commission's argument that a comparative evaluation of competing applications was required: "FERC can point to nothing in the relevant statutes or regulations, or in any proven agency practice, that requires comparative evaluation of mutually exclusive applications for exemptions. Although 18 C.F.R. Sec. 4.104(e)(2) contemplates the filing of competing applications, that provision simply provides that the first filed will be favored unless the FERC affirmatively finds that the later filed application is measurably better." 701 F.2d at 219 (emphasis in original) (footnote omitted).
 
 
 16
 The opinion concluded that strong policy reasons underlie the requirement that the Commission be bound by its own rules:
 
 
 17
 There is a strong interest in repose under any regime of legal rules. And particularly in this context--given the expense of developing hydroelectric projects--applicants, other potential investors and lending institutions must be able confidently to rely on the predictability of the FERC's procedural rules. To sustain the sudden reversal of a final and nonreviewable FERC decision on nothing more than an assertion of inadvertent error would run contrary to these important interests.
 
 
 18
 701 F.2d at 219-20 (emphasis in original).
 
 C.
 
 19
 This dispute is identical in all material respects to the Hirschey case. On December 14, 1981, International Paper filed applications for exemptions for two distinct projects which would use already-existing dams on the Lachute River in New York State. Those applications competed with the previously-filed license applications of the intervenors, Long Lake Energy Corporation and the State of New York. Both intervenors were served with notice of petitioner's filing. Brief for Petitioner at 7-8. Long Lake moved, at that time, to have petitioner's applications rejected, arguing that International Paper's two proposals were, in effect, a single project that exceeded the 5 MW limit for exemptions. Long Lake also asserted that petitioner did not possess the requisite property interests to qualify for an exemption. Brief for Respondent at 6.
 
 
 20
 The Commission did not respond to Intervenor's objections; instead, FERC notified International Paper on February 11, 1982 that its applications had been accepted for filing, and that both exemptions would automatically be granted unless the Commission acted upon them within 120 days. See Joint Appendix ("J.A.") at 35-40.[4]
 
 
 21
 The Commission did not act within the 120-day period. International Paper's exemption applications were thus "deemed ... consistent with the public interest and granted" by operation of law on June 11, 1982. On that date the thirty-day period for filing petitions for rehearing began to run. Despite having filed competing license applications and having notice of the Commission's prior acceptance, neither intervenor filed a petition for rehearing to contest the automatic grant of petitioner's exemptions. Petitioner's exemptions became nonreviewable on July 11, 1982. See Hirschey, 701 F.2d at 217.[5]
 
 
 22
 On July 20, 1982, the Commission, sua sponte, vacated the exemptions granted to International Paper.[6] Resorting to the same rationale it used to justify its actions in Hirschey, the Commission explained that it had inadvertently failed to suspend the 120-day rule and that where competing license applications were on file, the Commission had to perform a comparative analysis of those applications. FERC maintained that section 313(a) of the Federal Power Act and its inherent authority to remedy mistakes empowered it to correct its failure to suspend the 120-day rule and return the parties to the status quo ante. See Long Lake Energy Corp., 20 F.E.R.C. (CCH) p 61,058 (July 20, 1982); Brief for Respondent at 8.
 
 
 23
 On September 20, 1982, FERC granted International Paper's petition for rehearing solely for the purpose of further consideration. Following the rejection of its position in Hirschey, however, the Commission sought to limit that case to its own facts and denied International Paper's petition stating that it was "clearly ministerial error for an exemption to be granted when there were two earlier-filed license applications pending." J.A. at 76.
 
 II.
 
 24
 On appeal, FERC seeks to avoid the force of the Hirschey decision just as it did in the order denying International Paper's petition for reconsideration. Abandoning the reasoning articulated in its July 20, 1982 order revoking petitioner's exemptions, the Commission now asserts that it has the power to vacate an otherwise final and nonreviewable order under the "ministerial" or "clerical" error doctrine. See Brief for Respondent at 18-28.[7] The Commission's claim appears to be that its failure to suspend the 120-day rule and conduct a comparative evaluation of the competing license applications within the time permitted by the rule was excusable because the Commission committed some sort of clerical or ministerial error. At oral argument, the Commission asserted that it had committed three separate ministerial errors in this case--its "utter disregard" of the first-in-time preference accorded Long Lake under 18 C.F.R. Sec. 4.104(e)(2), its failure to consider the dam safety regulations, and its failure to consider the intervenor's arguments on the merits of petitioner's exemptions even though those arguments had been raised before, and never reasserted after, the Commission accepted petitioner's applications for filing. Only the first two "errors" were specified in the Commission's briefs. Making these mistakes, the Commission contends, conferred upon it the power to revoke petitioner's exemptions and order a comparative evaluation of the several projects.
 
 
 25
 The argument is specious. The Commission has pointed to no clerical mistake or ministerial oversight that prevented or excused it from acting on petitioner's applications within the allowable time. Indeed, the Commission has offered no explanation for its failure to suspend the 120-day rule. The Commission took no action, and apparently did not attempt to take any action, during the 120 days which could have been frustrated by some clerical error. And, although FERC assures us that it intended to review the safety concerns it now finds so troublesome within the 120 days, we find no record support for this assertion.[8] We cannot excuse FERC from compliance with its own rules merely because it chooses to label that failure a "ministerial error." In these circumstances, the expansion of the clerical error doctrine to permit revocation of petitioner's exemptions validly granted by operation of law would leave the Commission free to disregard any statutory or regulatory requirement. We agree with the Hirschey court's refusal to "sustain the sudden reversal of a final and nonreviewable FERC decision on nothing more than an assertion of inadvertent error ...." 701 F.2d at 220.[9]
 
 
 26
 The contours of the ministerial error doctrine need not be precisely defined to show that the "errors" alleged by the Commission fail to fall within those boundaries. The Hirschey court cited American Trucking Associations, Inc. v. Frisco Transportation Co., 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958), as an example of the operation of the doctrine. In that case, a railroad affiliate (Frisco) had acquired several independent motor carriers pursuant to a statute that had long been construed to limit such acquisitions to " 'operations which are auxiliary or supplementary to train service,' at least in the absence of special circumstances which might justify less restrictive operations." 358 U.S. at 135 n. 2, 141, 79 S.Ct. at 172 n. 2, 175. The Frisco Court upheld the ICC's power to correct the affiliate's operating certificate which--due solely to a clerical error--had allowed the affiliate to engage in unrestricted motor carrier services.
 
 
 27
 Since Frisco illustrates what the Hirschey court meant by a ministerial error, the case deserves a rather full explanation. In administrative hearings to determine whether the proposed acquisitions met applicable statutory standards, the affiliate, Frisco, requested unrestricted operating authority, but took the position that the proposed acquisitions would enable it to establish coordinated truck service with the train service of its parent railroad. 358 U.S. at 136, 79 S.Ct. at 172. The hearing examiner recommended approval of each acquisition "subject to such further limitations, restrictions, or modifications as the Commission may hereafter find necessary ... to insure that the service shall be auxiliary to the train service of the [parent] railroad ...." Id. at 136, 79 S.Ct. at 172. A division of the Commission subsequently adopted the examiner's recommendations, including the above-quoted reservation. Although Frisco had sought unrestricted authority, it did not seek full Commission review of the division's report and, instead, notified the Commission that it would consummate the proposed acquisitions "subject to the terms prescribed." Id. at 137, 79 S.Ct. at 173.
 
 
 28
 The operating certificates eventually issued by the Commission staff did not contain the original reservation of authority. 358 U.S. at 137, 79 S.Ct. at 173. The division subsequently reopened the acquisition proceedings and expressly limited Frisco's motor carrier authority to those services "auxiliary or supplementary" to the rail services of its parent. Id. at 137-39, 79 S.Ct. at 173-74. In an "exhaustive report," the division concluded that the original reservation of authority had been inadvertently omitted from the certificates. The division also explained the mechanics of its internal practices relating to the issuance of certificates and pointed out how the error probably had occurred. Id. The full Commission affirmed.
 
 
 29
 Frisco sought judicial review and, when the case reached the Supreme Court, argued that the Commission had no power to modify unconditional certificates. The Supreme Court found, however, that Frisco knew that the reservation of authority was included in the original grant of operating power; in fact, because the decisions of the hearing examiner and the division were not appealed to the full Commission, the Court concluded that Frisco acceded to the approval of "limited operations on the routes in question." 358 U.S. at 141, 79 S.Ct. at 175. Moreover, Frisco's initial position before the agency reflected congressional intent and long-standing agency practice to confine acquisitions of motor carriers by railroads to operations that would supplement the services provided by the railroad. The original authority clearly stated that the right to impose future conditions on the certificates was reserved and was thus consistent with Frisco's understanding of Commission policy. Id. at 140-41, 79 S.Ct. at 174-75.
 
 
 30
 It was only when the original authority was formally set into an operating certificate by the Commission's staff that the reservation was omitted. The Court found persuasive the Commission's explanation of how the omission occurred. The staff had no substantive authority to amend original orders; in fact, the Commission could not change its original decision without notifying the competing carriers who had protested the initial decision: "This factor militates strongly in favor of the Commission's conclusion that the reservations inadvertently were omitted ...." 358 U.S. at 143, 79 S.Ct. at 176. The publishing of certificates by the Commission staff was purely a mechanical task, limited to the reproduction of the original order. Because the staff usually dealt with certificates authorizing unrestricted service by non-rail affiliated motor carriers, however, the Court found that the reservation in these certificates was "unusual, and it is easy to see how the restrictions were omitted." Id. at 143-44, 79 S.Ct. at 176-77. The Court concluded, therefore, that the Commission had statutory authority to correct Frisco's certificates to include the restrictions originally understood to be part of Frisco's operating authority.
 
 
 31
 Cases decided by this circuit also demonstrate the limited character of the clerical error doctrine. In Florida Power & Light Co. v. FERC, 617 F.2d 809 (D.C.Cir.1980), the Commission had formally failed to suspend one of petitioner's proposed rate schedules within the 30 days allowed for such action by the statute. 617 F.2d at 817. However, it was not disputed that FERC "decided to suspend the proposed schedule and amendment [within the 30 days] ... at a public hearing which [petitioner]'s counsel attended, nor that the Commission instructed [its] ... Secretary to issue the order on that day." Id. The court stated:
 
 
 32
 There is no dispute in this case that the Commission intended to act within the 30-day limit and thought that it had. There is no question of prejudice to the petitioners, who were present at the meeting and who knew from three previous proceedings how the Commission would rule on its filing. In such circumstances, we hold that the Commission acted within the 30-day limit, even though the order expressing that action was, due to a clerical oversight, published one day late.
 
 
 33
 Id. (emphasis added).
 
 
 34
 Howard Sober, Inc. v. ICC, 628 F.2d 36 (D.C.Cir.1980) is to a similar effect. In that case, the ICC had ordered a modification of Sober's certificate of public convenience and necessity to include a restriction on Sober's authority that had been implicitly imposed in a prior proceeding but had not been "include[d] on the certificate due to a ministerial error." 628 F.2d at 40-41. In the earlier proceeding, the Commission had prohibited Dealers Transit, Inc. and all its affiliates from engaging in secondary driveaway movements. Although Sober was an affiliate of Dealers when that restriction had been imposed, it argued that the Commission could not alter its certificate once granted without complying with the statute's specific revocation procedures. Id. The court held, however, that the proposed modification did not involve a "substantive change[ ] in the authority granted to the carrier[ ]." Id. at 41 n. 16. Instead,
 
 
 35
 [t]he Commission exercised its inherent power in this case to place clearly on Sober's certificate the restriction already imposed by its [prior] order .... The Commission has not revoked any authority held by Sober; it instead has made more explicit the scope of the driveaway authority granted in 1972.
 
 
 36
 Id. at 41 (emphasis added) (footnote omitted).
 
 
 37
 The clerical error rule, as delineated by these cases, cannot be stretched to justify the Commission's action in this case.[10] Here, there was no mere clerical omission of any condition that petitioner understood to be intended. Instead, there was a failure by the Commission to take discretionary action and a consequent creation of a legal right by operation of law.
 
 
 38
 We therefore order the Commission to reinstate petitioner's exemptions.
 
 
 39
 So ordered.
 
 
 
 [1]
 18 C.F.R. Sec. 4.105(b) provides in pertinent part:
 (4) Automatic exemption. If the Commission has not taken one of the actions set forth in paragraph (b)(5) of this section within 120 days after notifying the applicant that its application for exemption from licensing is accepted for filing, exemption of the project, as proposed, will be deemed to be found consistent with the public interest and granted, on the standard terms and conditions set forth in Sec. 4.106.
 (5) Affirmative action on exemption. Within 120 days after notifying an applicant that its application for exemption from licensing is accepted for filing, the Commission may take any of these affirmative actions:
 (i) Grant the exemption as requested;
 (ii) Grant an exemption from provisions of Part I of the Federal Power Act (and the regulations issued under those provisions) other than those for which exemption was requested, upon finding that modification of the exemption requested is in the public interest;
 (iii) Deny the exemption if granting the exemption would be inconsistent with the public interest; or
 (iv) Suspend the 120-day period for action under this paragraph, upon finding that additional time is necessary for gathering additional information, conducting additional proceedings, or deliberating on the issues raised by the application.
 Even where an exemption application automatically takes effect, it is subject to numerous terms and conditions and to revocation under the specific procedures in 18 C.F.R. Sec. 4.106. See also Hirschey, 701 F.2d at 218 n. 6.
 
 
 [2]
 In pertinent part, 16 U.S.C. Sec. 825l (a) (1982) states that "[n]o proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." Subsection (b) prohibits the reviewing court from considering any "objection to the order of the Commission ... [not] urged before the Commission in the application for rehearing unless there is reasonable ground for failure to" raise the objection. 16 U.S.C. Sec. 825 l(b) (1982)
 
 
 [3]
 Section 313(a), 16 U.S.C. Sec. 825l(a) (1982), provides, among other things:
 Until the record in a proceeding shall have been filed in a court of appeals, ... the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this [Act].
 Section 309, 16 U.S.C. Sec. 825h (1982), grants the Commission
 power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this [Act].
 
 
 [4]
 Public notice of the Commission's action was issued on February 25, 1982, and published in the Federal Register on March 1, 1982. See 47 Fed.Reg. 8640-41 (1982). The Federal Register notice provided that "[a]nyone may submit comments, a protest, or a petition to intervene ... on or before April 16, 1982." Id. Neither intervenor submitted any comments, protests, or petitions at any time before petitioner's exemptions were granted
 
 
 [5]
 Because neither intervenor sought rehearing from the Commission, their arguments going to the merits of petitioner's exemptions are not properly before us. See 16 U.S.C. Sec. 825l (1982); see also infra note 2
 Even though Long Lake filed no formal rehearing petition, it argues that the Commission's action was nonetheless consistent with the agency's statutory authority because Long Lake sent the Commission a letter that constituted a timely petition for rehearing. Brief for Long Lake at 7-11. That letter was sent, however, and to use Long Lake's own language, only in "response to a letter addressed to [the Commission] from International Paper" in which petitioner requested that the Commission confirm the grant of its exemptions. In the letter, counsel for Long Lake pointed to an alleged inconsistency between the Commission's "first-in-time" rule and the operation of the automatic exemption rule in the circumstances of this case. J.A. at 51. The correspondence concludes with a "request[ ] that the Commission confirm that its automatic exemption provision, Sec. 4.105(b)(4), does not pertain in this case." Id.
 Long Lake concedes that its letter did not comply with the many procedural requirements governing petitions for rehearing at that time and the Commission "did not treat [the letter] as a petition for rehearing" because it "did not comply with the Commission's rules ...." Brief for Respondent at 31 n. 16. Moreover, there is no evidence that Long Lake intended that letter to be considered a petition for rehearing. Because intervenor made no proper effort to protect its rights, we, along with the Commission, reject Long Lake's belated attempt to convert its correspondence into a petition.
 
 
 [6]
 July 20, 1982 was a somber day for several other applicants whose exemptions had been automatically granted. In addition to International Paper's exemptions, FERC also revoked the exemptions it had granted to Mary Jane Hirschey, the Crown Zellerback Corp., and the Hydro Development Group, Inc. See Hydro Development Group Inc., 20 F.E.R.C. (CCH) p 61,059 (July 20, 1982)
 
 
 [7]
 This argument apparently found its genesis in Hirschey dicta where that court noted it was not presented with "a case in which the FERC has acted to correct some ministerial error.... Indeed, the FERC does not even claim that the asserted error--failure to engage in a comparative evaluation of competing applications--was ministerial in nature." Hirschey, 701 F.2d at 219 (citation omitted)
 
 
 [8]
 In fact, we note that petitioner's original applications must have contained, in accordance with 18 C.F.R. Sec. 4.107, not only a "description of any existing dam or impoundment to be utilized by [its] ... project" but also a "description of the nature and extent of any repair, reconstruction, or other modification of a dam that would occur in association with [its] ... project." FERC makes no allegation that petitioner's applications were deficient in any respect; indeed, without this safety-related information the Commission could not have accepted the applications for filing
 
 
 [9]
 FERC argues that Hirschey is distinguishable because the exemption applicant in that case was also the first-filed applicant. According to the Commission, Hirschey held that the expiration of the 120-day period resulted in the automatic grant of Ms. Hirschey's application only because she also happened to have been the first-filed applicant. In Hirschey, therefore, there was no conflict between the first-in-time rule and the operation of the automatic exemption rule. See J.A. at 75. The intervenors adopt a similar position. See Brief for Long Lake at 6; Brief for New York State at 10-11. In truth, however, Hirschey 's interpretation of the effect and operation of the automatic exemption rule is distinct from, and in no way dependent on, its reading of the first-filed rule
 FERC's attempt to distinguish the present case from Hirschey on its facts and equities suffers a similar flaw. In the briefs and at oral argument, Commission counsel asserted that all the parties, including International Paper, had suspected FERC committed some type of ministerial error by allowing the exemption applications to take effect automatically. This suspicion, according to FERC, led International Paper to "immediately ask[ ] the Commission to clarify the situation." Brief for Respondent at 30. We think the Commission's representation is misleading. The operative portion of petitioner's letter stated only:
 We have caused the docket to be examined and find that as of today the Commission has not taken any action. Therefore, in view of the size of the projects we would appreciate confirmation that the exemptions have been automatically granted.
 J.A. at 48 (emphasis added). This letter obviously represents nothing more than good business practice. The company wanted its understanding of the situation confirmed in writing before spending large sums. While we recognize the obligation of an advocate to put the best face on legal and factual materials that they will bear to advance his client's cause, there are also limits to that obligation imposed by countervailing obligations to the court and to the judicial process. Here we think that the representation about the letter, in particular, pressed against, if it did not transgress, the limits of acceptable advocacy.
 
 
 [10]
 There remains the question of whether the Commission can modify International Paper's exemptions to include terms and conditions related to dam safety at the two proposed projects. International Paper concedes the agency's power to order such modifications and such action seems an appropriate exercise of Commission power. Because petitioner has agreed to modification of its exemptions, see Reply Brief for Petitioner at 18, 24, we need not decide whether FERC's failure to implement these conditions within the regulatory framework can be excused under the clerical error rule. We note, however, that FERC's failure to impose safety-related conditions on petitioner's exemptions is analogous to the ICC staff's omission of the reservation of authority in American Trucking Assns, Inc. v. Frisco Transportation Co. International Paper knew that these safety-related conditions were to be included in the original exemptions and the company suffers no prejudice by their inclusion at this time. We also note that the modifications proposed and approved by this court's decision appear to be reflected in Proposed Rule 4.106(h) which will require periodic safety inspections and remedial measures to ensure dam safety as a term of all exemptions under the Act