Mary Jane Ruderman
HIRSCHEY, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Long Lake Energy
Corporation, Intervenor.

No. 82–2170.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 15, 1985.

William J. Kenney and Frank Koszorus, Jr., Washington, D.C., were on motion for attorneys' fees and expenses.

Jerome M. Feit, Ellen K. Schall and Andrea Wolfman, Washington, D.C. were on response to motion for attorneys' fees and expenses.

Before EDWARDS and SCALIA, Circuit Judges, and VAN DUSEN,* Senior Circuit Judge, United States Court of Appeals for the Third Circuit.

## ON MOTION FOR ATTORNEYS' FEES AND EXPENSES

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Concurring opinion filed by Circuit Judge SCALIA.

HARRY T. EDWARDS, Circuit Judge:

The petitioner, Mary Jane Ruderman Hirschey, seeks an award of attorneys' fees under the Equal Access to Justice Act ("EAJA")[1] as the prevailing party in a case

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

1. 28 U.S.C. § 2412 (1982).

2. See *Hirschey v. FERC,* 701 F.2d 215 (D.C.Cir. 1983) (hereinafter cited as *Hirschey I*).

3. 16 U.S.C. §§ 791a *et seq.* (1982).

4. *Hirschey v. FERC,* 760 F.2d 305, 311 (D.C.Cir. 1985) (hereinafter cited as *Hirschey II*).

5. *Hirschey v. FERC,* No. 82–1842 (D.C.Cir. Aug. 11, 1982) (unpublished order).

6. 701 F.2d 215 (D.C.Cir.1983).

against the Federal Energy Regulatory Commission ("FERC")[2] under the Federal Power Act ("FPA").[3] In response to her initial petition for fees and costs, we held that Ms. Hirschey is eligible for an award of fees, but not costs, for "proceedings at the judicial level."[4] We now determine the amount of fees due.

## I. BACKGROUND

The case underlying this fee petition concerned Hirschey's claim for an exemption from the licensing requirements of the FPA in order to develop a small hydroelectric project. Petitioner filed an application for an exemption in December, 1981, which became effective on June 7, 1982. On July 20, 1982, the Commission, *sua sponte*, issued an order vacating the petitioner's exemption. Hirschey subsequently filed a petition for review with this court, which was dismissed for failure to exhaust administrative procedures.[5] After a futile attempt to file a petition for rehearing with the Commission, Hirschey filed a second petition for review with this court. On this second attempt, we upheld her claim to an exemption in *Hirschey I*.[6] Petitioner then applied in a timely fashion for an award of attorneys' fees and costs pursuant to EAJA.

Due to a paperwork error in the Court Clerk's office, consideration of the petitioner's EAJA claim was greatly delayed. In *Hirschey II*,[7] we held that attorneys' fees may be granted under EAJA in a case arising under the FPA, although section 317 of the FPA[8] bars an award of costs.[9]

---

7. 760 F.2d 305 (D.C.Cir.1985).

8. 16 U.S.C. § 825p (1982).

9. We note in passing that the legislative history of the 1985 EAJA amendments, Act of Aug. 5, 1985, Pub.L. No. 99–80, 99 Stat. 183 (1985), expressly ratifies the holding of the majority opinion in *Hirschey II*. *See* H.R. REP. No. 120, 99th Cong., 1st Sess. 17 (1985), U.S.Code Cong. & Admin.News 1985, pp. 132, 145 ("The language of section 2412(d)(1)(A) expresses the view that prevailing parties shall be awarded attorney's fees and, when available, costs as well.").

This legislative history was wholly unnecessary to support the judgment in *Hirschey II* and

We also determined that the petitioner is eligible for a fee award under EAJA [10] for proceedings at the judicial level and established a timetable for additional filings and for discovery by the Government. We remanded the petitioner's request for fees for proceedings at the agency level for consideration and initial determination by the Commission.[11]

## II. DISCUSSION

### A. *Eligible Hours*

The petitioner requests this court to assess fees against the Government for four separate stages of the proceedings in this case. First, she claims that certain aspects of her representation before the agency were necessarily related to the issues successfully raised on appeal and that she is entitled to recover for this portion of the proceedings before FERC. We clearly rejected this claim in *Hirschey II* when we remanded the matter for initial determination by the Commission.

Second, the petitioner submits the hours spent on her first unsuccessful appeal to this court. Because this appeal was dismissed as premature, petitioner was not a "prevailing party" [12] in the action. Petitioner thus fails to meet the EAJA requirements [13] for an award of fees for her initial appeal. The Commission concedes that some of the legal research done for the unsuccessful appeal was useful in *Hirschey I* and should be compensated. We agree, and find that, of the hours in question, 35.55 hours of research (21.5 partner and 14.05 associate) are related to *Hirschey I* and eligible for a fee award.

Third, Hirschey has documented the hours spent on the appeal in *Hirschey I* between September 20, 1982, and March 1, 1983. In discovery, the Commission identified certain hours that were related to proceedings before the agency and to Hirschey's unsuccessful effort to oppose intervention by Long Lake Energy Corporation. We have eliminated those hours and determine that 319.5 partner hours and 8.6 associate hours are reasonably compensable for this stage of the proceedings.

Fourth, the petitioner requests fees for work connected with the EAJA fee application. Cases in this Circuit have routinely awarded reasonable fees incurred in requesting fees under fee-shifting statutes,[14] and we find that Hirschey should receive fees for expenses incurred in her successful EAJA action.[15] Although the

it is irrelevant in our present determination on fees; therefore, we can find no reason to address the concerns raised in the concurring opinion regarding the authoritative quality of the congressional committee report.

**10.** As a financially qualified, prevailing party, Hirschey meets the requirements for a fee award pursuant to 28 U.S.C. § 2412(d)(1)(A) (1982). The Government did not demonstrate that its position was "substantially justified" and we did not find special circumstances that would preclude an award of fees. *See Hirschey II*, 760 F.2d at 309–10.

**11.** The Commission must determine if the proceedings at the agency level were an "adversary adjudication" for which attorneys' fees are available under either 5 U.S.C. § 504(a)(1) (1982) or 28 U.S.C. § 2412(d)(3) (1982). *See Hirschey II*, 760 F.2d at 310–11.

**12.** A plaintiff is a prevailing party for the purpose of attorneys' fees if she "succeed[s] on any significant issue in litigation which achieves some of the benefit sought in bringing suit."

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

**13.** 28 U.S.C. § 2412(d)(1)(A) (1982) ("a court shall award to a prevailing party …").

**14.** *See Sierra Club v. Environmental Protection Agency*, 769 F.2d 796, 811–12 (D.C.Cir.1985) (Section 307(f) of the Clean Air Act, 42 U.S.C. § 7607(f) (1982)); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 29–30 (D.C.Cir.1984) (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1982) and the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) (1982)).

**15.** In light of our opinion in *Hirschey I*, there can be no doubt that the Government's position in this case was not substantially justified. *See Cinciarelli v. Reagan*, 729 F.2d 801, 809–10 (D.C. Cir.1984). The Government carries the burden of demonstrating that its position was substantially justified, *see Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), and it did not even raise the issue as a defense to Hirschey's EAJA claim.

**4**

Commission does not challenge the accuracy of the time claimed, it argues that the fee award for this work should be limited to the litigation of *Hirschey II*. On this point, the Commission suggests that petitioner's supplemental fee application was made necessary only because her initial fee application was inadequate. However, no such implication should be drawn from our opinion in *Hirschey II*. The Commission overlooks the fact that the litigation on fees was extended because *it* requested discovery. In addition, the focus in *Hirschey II* was not on whether the petitioner's claims for fees were reasonable, but on whether Hirschey was entitled to an award at all. If the fee application has been bifurcated, it is because of the Commission's opposition to Hirschey's EAJA claim. Accordingly, since the hours claimed are not otherwise in dispute, we find that the petitioner is entitled to include 319.25 partner hours and 82.7 associate hours for work on the fee application.

### B. *The Appropriate Rate*

The appropriate rate for "fees or other expenses" under EAJA, 28 U.S.C. § 2412(d)(1)(A), is defined in subsection 2412(d)(2), as follows:

> (2) for the purposes of this subsection—
>
> (A) "fees and other expenses" includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not ·be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

The petitioner claims that the $75 per hour statutory cap should be adjusted upward for cost-of-living increases and for special factors in the litigation. We agree that the statutory maximum on fees should be increased to reflect changes in the cost-of-living. We also note that this court has held in EAJA claims that we may look beyond the single factor stipulated in the statute to special factors, such as "the contingent nature of success, delay in payment or quality of representation," in determining whether to adjust the statutory cap.[16] We find that delay in payment is the only special factor that warrants an increase in the statutory rate in this case.

The petitioner urges that an additional increase in the fee award is appropriate because the delay caused by the Commission's illegal conduct has added to her costs for developing her hydropower project. This argument misconstrues the purposes of EAJA. The fee limitation reflects an attempt to provide reasonable compensation for successful litigants, while simultaneously containing costs.[17] EAJA does not provide general indemnification against the consequences of litigation or of agency action.

We likewise find inapposite the petitioner's claim that *ex parte* contacts between a FERC Commissioner and parties with interests opposed to petitioner's on the issue of FPA exemptions constitutes bad faith by the Commission which justifies a rate increase. Bad faith sometimes may be a consideration under subsection 2412(b), but the question of impermissible *ex parte* contacts was not an issue in either *Hirschey I* or *Hirschey II*, and the belated attempt to raise the question now is unavailing. The award to petitioner is therefore limited to a recovery of fees under 2412(d)(1)(A).

We also reject the petitioner's invo-

**16.** *Action on Smoking and Health v. CAB,* 724 F.2d 211, 218 (D.C.Cir.1984).

**17.** *See Award of Attorneys' Fees Against the Federal Government: Hearings Before the Subcommittee on Courts, Civil Liberties, and Administration of Justice of the House Committee on the Judiciary,* 96th Cong., 2d Sess. 32 (1980) (testimony of Sen. DeConcini); *id.* (statement of Rep. Kastenmeier).

cation of a special factor for contingency.[18] An upward adjustment of an award to compensate for the risk of losing a lawsuit "is permissible only in an exceptional case." [19] Here the petitioner has conceded that the risk in her case was far from exceptional by stating that "the probability of ultimately prevailing on the issue was not seriously in doubt to Counsel." [20] We agree that the result in *Hirschey I* was hardly surprising.

As noted above, petitioner's request for a cost-of-living increase in the $75 rate is an appropriate adjustment as authorized by subsection 2412(d)(2) of EAJA. We reject the Commission's argument that recent amendments to EAJA,[21] which did not alter the $75 fee limit, compel us to regard that amount as fully compensatory and deny a cost-of-living increase.[22] First, the original enactment of EAJA applies to this case.[23] Second, even if the amendments applied, they do not alter any aspect of 28 U.S.C. section 2412(d)(2)(A). The provision for a cost-of-living increase remains unchanged and therefore applies as it did originally. Consequently, we approve a cost-of-living increase in the statutory cap to $89.73.[24]

We should emphasize here that the statutory cost-of-living adjustment authorized by subsection 2412(d)(2) increases the maximum rate designated in the same subsection, not the attorneys' prevailing market rate. The $89.73 reflects this adjustment. In the instant case there is no dispute that both the actual billed rate and the prevailing market rate for partners' hours exceeded $89.73 throughout the entire period of this litigation. Hence the petitioner is entitled to compensation for partners' hours at a rate of $89.73. Associates' hours were billed at $85 throughout the litigation. The government concedes this fact, and the petitioner has submitted documentation that the $85 rate was within the range of prevailing market rates for associates of comparable experience.[25] "In almost every case, the firms' established billing rates will provide fair compensation," [26] and there has been no showing that this case is an exception. Therefore we find that $85 is an adequate rate for associates' time. Because this rate is lower than the $89.73 maximum allowed by subsection 2412(d)(2) following cost-of-living adjustment, the statutory cap does not come into play in determining compensation for associates' hours.

We recognize that there is arguably a question whether we should limit the fees for the hours billed each year by the adjusted statutory maximum applicable *for that year*, or rather limit them only by the *current* statutory maximum. We will adopt the latter approach, in order to compensate petitioner for delay, as we are authorized to do under the "special factors" criterion in EAJA.[27]

Pursuant to the foregoing findings and conclusions, the petitioner is due a total of $68,198.98 in attorneys' fees.

**18.** FERC misconstrues this factor as requiring a contingent fee arrangement. Rather, it is designed to compensate a party for assuming a real risk of pursuing litigation that has an unlikely outcome. *See Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980) (en banc).

**19.** *Murray v. Weinberger*, 741 F.2d 1423, 1432 (D.C.Cir.1984).

**20.** Petitioner's Supplement I to Motion for Award of Attorneys' Fees and Expenses at 17.

**21.** Act of Aug. 5, 1985, Pub.L. No. 99–80, 99 Stat. 183 (1985).

**22.** The Commission characterizes the recent legislation as a reenactment of EAJA, but it is actually a series of amendments, including one that repeals the sunset provision that caused 28 U.S.C. § 2412(d) to expire October 1, 1984. *See* Act of Aug. 5, 1985, Pub.L. No. 99–80 § 6, 99 Stat. 183, 186 (1985).

**23.** Act of Aug. 5, 1985, Pub.L. No. 99–80 § 7, 99 Stat. 183, 186 (1985).

**24.** The Commission informs us, and the petitioner agrees, that the cost of living increased in the Washington, D.C. area by 19.6% between 1981 and May, 1985.

**25.** Affidavit of William I. Harkaway. Supplement to Motion for Fees, Attachment L.

**26.** *Laffey v. Northwest Airlines, Inc.*, 746 F.2d at 24.

**27.** *See Action on Smoking and Health*, 724 F.2d at 219–20.

## C. *Expenses*

■ Under the category of expenses, the petitioner seeks payment for work performed by paralegals, consultant fees, a portion of secretarial expenses and office overhead and "out-of-pocket" expenses such as photocopying, postage, taxi fares and secretarial overtime. EAJA provides that awardable expenses "include[ ] the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case."[28] We have previously found that expenses such as postage and taxi fares are not compensable under EAJA,[29] and in *Hirschey II* we held that the FPA precludes an award of costs, which include photocopying and filing fees.[30] These claims do not merit further discussion.

We also reject the petitioner's claim for overhead and secretarial expenses, which are traditionally covered by attorneys' fees and not charged separately. The engineering consultant fees for which Hirschey seeks reimbursement were not relevant to the resolution of either *Hirschey I* or *Hirschey II*; therefore, no expenses may be awarded for the consultant's work.

The Commission does not object to compensation for work by paralegals as an expense item or to the rate the petitioner suggests, which we find reasonable. When the hours performed by paralegals on the first appeal are reduced to those related to the successful appeal, the petitioner is entitled to an award for 285.6 hours at $30 per hour. In addition, a charge of $142.61 for computer research is appropriate.

In sum, we award the petitioner a total of $8710.61 in expenses.

### III. CONCLUSION

For the reasons discussed above, we award the petitioner a total of $76,909.59 in attorneys' fees and expenses.

*So ordered.*

**28.** 28 U.S.C. § 2412(d)(2)(A) (1982).

**29.** *Action on Smoking and Health,* 724 F.2d at 224.

SCALIA, Circuit Judge, concurring:

Although I dissented in *Hirschey II,* believing that the EAJA did not apply to the present case, since the court held otherwise I have participated in this subsequent consideration of what the amount of the EAJA award should be. I join the court's opinion with the exception of the dictum discussed below. I write separately principally to clarify several points in the current opinion related to my earlier dissent.

I agree that the petitioner can be compensated for the attorneys' fees expended in litigating her right to attorneys' fees, even though the "substantial justification" defense to the assessment of EAJA fees, *see* 28 U.S.C. § 2412(d)(1)(A) (1982), literally applies to the conduct of the fee litigation as well as to the conduct of the substantive suit, and even though in my view (as my earlier dissent suggests) FERC's litigation of the fee issues was amply justified. The defense of substantial justification for the fee litigation was not asserted by the government, and as I understand the opinion, Maj. op. at 3 n. 15, we have declined to resolve the applicability of that defense here, just as we have declined to resolve it in other cases where the point was not argued, *see Cinciarelli v. Reagan,* 729 F.2d 801, 810 (D.C.Cir.1984); *Martin v. Lauer,* 740 F.2d 36, 44–45 n. 15 (D.C.Cir. 1984). I further note that there was not argued, and we have not considered, the effect of the fact that in the present case the fees awarded for litigating fee issues substantially exceeded the value of the litigated fees themselves—or, to put it another way, the fees awarded for litigating fees substantially exceeded the fees awarded for litigating petitioner's substantive grievance. The Supreme Court currently has before it the analogous question of whether there must be some proportionality between the fees awarded and the recovery in the underlying case. *See City of Riverside*

**30.** 760 F.2d at 307.

*v. Rivera*, 763 F.2d 1580 (9th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985).

While not contesting that *Hirschey II* is now the law of this circuit, I must nonetheless dissociate myself from the dictum of the court—which may be given effect in other circuits—that the legislative history of the 1985 EAJA amendments "ratifies the holding of the majority opinion in *Hirschey II*." Maj. op. at 2 n. 9. *Hirschey II* and the three decisions of other circuits reaching the same result (two of which, like *Hirschey II* itself, were accompanied by dissents), present a conflict with the contrary holding of the Ninth Circuit in *Tulalip Tribes v. FERC*, 749 F.2d 1367, 1369 (9th Cir.1984), rather than the sort of uniform judicial interpretation that Congress, by unamended reenactment of the subject provision, may be deemed to have approved. *See, e.g., Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978). The entire case for the majority's asserted "ratification" of *Hirschey II* rests upon the following statement in the House Committee Report:

The language of section 2412(d)(1)(A) expresses the view that prevailing parties shall be awarded attorney's fees and, when available, costs as well. This interpretation ratifies the approach taken by four circuits. [Citing, *inter alia, Hirschey II*.] ... Thus, the Committee rejects the interpretations of the statute by the 9th Circuit. See *Tulalip Tribes*....

H.R. REP. No. 120, 99th Cong., 1st Sess. 17 (1985), 1985 U.S.CODE CONG. & AD.NEWS 132, 145. It is most interesting that the House Committee rejected the interpretation of the Ninth Circuit, and perhaps that datum should be accorded the weight of an equivalently unreasoned law review article. But the authoritative, as opposed to the persuasive, weight of the Report depends entirely upon how reasonable it is to assume that that rejection was reflected in the law which *Congress* adopted. I frankly doubt that it is ever reasonable to assume that the details, as opposed to the broad outlines of purpose, set forth in a committee report come to the attention of, much less are approved by, the house which enacts the committee's bill.[1] And I think it time for courts to

1. Several years ago, the following illuminating exchange occurred between members of the Senate, in the course of floor debate on a tax bill:

Mr. ARMSTRONG. ... My question, which may take [the chairman of the Committee on Finance] by surprise, is this: Is it the intention of the chairman that the Internal Revenue Service and the Tax Court and other courts take guidance as to the intention of Congress from the committee report which accompanies this bill?
Mr. DOLE. I would certainly hope so....
Mr. ARMSTRONG. Mr. President, will the Senator tell me whether or not he wrote the committee report?
Mr. DOLE. Did I write the committee report?
Mr. ARMSTRONG. Yes.
Mr. DOLE. No; the Senator from Kansas did not write the committee report.
Mr. ARMSTRONG. Did any Senator write the committee report?
Mr. DOLE. I have to check.
Mr. ARMSTRONG. Does the Senator know of any Senator who wrote the committee report?
Mr. DOLE. I might be able to identify one, but I would have to search. I was here all during the time it was written, I might say,

and worked carefully with the staff as they worked....
Mr. ARMSTRONG. Mr. President, has the Senator from Kansas, the chairman of the Finance Committee, read the committee report in its entirety?
Mr. DOLE. I am working on it. It is not a bestseller, but I am working on it.
Mr. ARMSTRONG. Mr. President, did members of the Finance Committee vote on the committee report?
Mr. DOLE. No.
Mr. ARMSTRONG. Mr. President, the reason I raise the issue is not perhaps apparent on the surface, and let me just state it: .... The report itself is not considered by the Committee on Finance. It was not subject to amendment by the Committee on Finance. It is not subject to amendment now by the Senate.
....
... If there were matter within this report which was disagreed to by the Senator from Colorado or even by a majority of all Senators, there would be no way for us to change the report. I could not offer an amendment tonight to amend the committee report.
... [F]or any jurist, administrator, bureaucrat, tax practitioner, or others who might chance upon the written record of this proceeding, let me just make the point that this is

become concerned about the fact that routine deference to the detail of committee reports, and the predictable expansion in that detail which routine deference has produced, are converting a system of judicial construction into a system of committee-staff prescription. But the authority of the committee report in the present case is even more suspect than usual. Where a committee-generated report deals with the meaning of a committee-generated text, one can at least surmise that *someone* selected these statutory words to convey this intended meaning. The portion of the report at issue here, however, comments upon language drafted in an earlier Congress, and reenacted, *unamended* so far as is relevant to the present point, in the 1985 law. We are supposed to believe that the legislative action recommended by the Committee and adopted by the Congress, in order to resolve a difficult question of interpretation that had produced a conflict in the circuits and internal disagreement within three of the five courts that had considered it, was *reenactment of the same language unchanged!* Such a supposition is absurd on its face; and doubly absurd since the precise section *was* amended in 1985 on such a point of minute detail as changing an "and" to "or." Pub.L. No. 99–80, § 2(a)(1), 99 Stat. 183, 184 (1985).

In sum, even if the 1985 EAJA amendments had been relevant to our determination in *Hirschey II*, I think the question should still have been resolved, as it was, not on the basis of what the committee report said, but on the basis of what we judged to be the most rational reconciliation of the relevant provisions of law Congress had adopted. I was disappointed that the court did not reconcile them as I would have, but I at least had the comfort, which implementation of the dictum here under discussion would deny me, of thinking that the court was wrong for the right reason.

not the law, it was not voted on, it is not subject to amendment, and we should discipline ourselves to the task of expressing congressional intent in the statute.

128 Cong.Rec. S8659 (daily ed. July 19, 1982).