SWANSON MINING CORPORATION,
et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 85–1189.

United States Court of Appeals,
District of Columbia Circuit.

Argued February 19, 1986.

Decided April 8, 1986.

Cressey H. Nakagawa, San Francisco, Cal., with whom Peter C. Kissel and Richard G. Morgan, Washington, D.C., were on the brief for petitioners. Charles W. Garrison, Washington, D.C., also entered an appearance for petitioners.

Joanne Leveque, Atty., F.E.R.C., with whom William H. Satterfield, Gen. Counsel and Jerome M. Feit, Solicitor, F.E.R.C., Washington, D.C., were on the brief for respondent.

Before WALD, SCALIA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Petitioners Swanson Mining Corporation and Walter M. Gleason seek review of a decision by the Federal Energy Regulatory Commission vacating an exemption from the licensing requirements imposed by Part I of the Federal Power Act, 16 U.S.C. §§ 791a–825r. The Commission vacated the exemption on the ground that it lacked authority to grant an exemption for a project located on a wild and scenic river. For the reasons that follow, we uphold the Commission in its determination that it lacked statutory authority to grant any exemption to Swanson.

## I. BACKGROUND

### A. *The Statutory Framework*

Part I of the Federal Power Act requires in general that anyone seeking to construct, operate or maintain any hydroelectric power facility must obtain a license from the Federal Energy Regulatory Commission (FERC or the Commission). *See* 16 U.S.C. § 817. Under the Energy Security Act, however, Congress has empowered the Commission to exempt certain small hydroelectric projects from this licensing requirement. *See* 16 U.S.C. § 2705(d). Prior to issuing an exemption under the Energy Security Act, the Commission must consult with the United States Fish and Wildlife

Service and any state agency charged with administering fish and wildlife resources and must include in any exemption all terms and conditions which these agencies determine to be appropriate to "ensure protection for fish and wildlife as well as other environmental concerns." *See* 16 U.S.C. § 2705(d); *cf.* 16 U.S.C. § 823a(c)–(d).

The Wild and Scenic Rivers Act limits FERC's authority to issue licenses under the Federal Power Act or to issue exemptions under the Energy Security Act.[1] *See* 16 U.S.C. §§ 1271–1287. The Wild and Scenic Rivers Act provides for the protection and preservation of certain rivers and their immediate environments by instituting a national wild and scenic rivers system. Rivers may be included in this system either by act of Congress or by an act of the legislature of the state or states through which the river flows. State-designated wild and scenic rivers are to be permanently administered by state agencies without expense to the United States. *See* 16 U.S.C. § 1273(a). Section 7(a) of the Wild and Scenic Rivers Act prohibits FERC from licensing construction of any project under the Federal Power Act "on or directly affecting" a wild and scenic river and also limits the power of any federal department or agency to assist in the construction of any "water resources project" having "a direct and adverse effect on the values for which [the] river was established." *See* 16 U.S.C. § 1278(a).

### B. *Swanson's Exemption Application*

In November of 1981, Swanson Mining Corporation and its sole stockholder Walter M. Gleason (hereinafter both referred to as "Swanson") applied for an exemption from FERC's licensing requirements for a small hydroelectric project located on the South Fork of the Trinity River in California.[2]

---

1. The grant of an exemption under the Energy Security Act is the factual equivalent of the grant of a license through a simplified and expedited procedure. *See* 16 U.S.C. § 2705(a). Thus the Wild and Scenic Rivers Act's limitations on FERC's licensing authority also apply to its authority to grant exemptions.

2. According to Swanson's application for an exemption, the powerhouse of its facility is located near the bank of the South Fork of the Trinity River. The water for the project is diverted from Madden Creek, a tributary of the South Fork, at a point about two miles above the point at which Madden Creek flows into the South Fork. This water runs through various

The South Fork had become a state-administered component of the national wild and scenic rivers system in January of 1981. *See* 46 Fed.Reg. 7484 (1981). Swanson's exemption application proposed to refurbish and operate a hydroelectric facility originally constructed in the late 1930s to provide electricity for a gold mining operation owned by Swanson. Although operation and maintenance of the hydroelectric project had ceased to be economically feasible after 1942, the enactment of section 210 of the Public Utility Regulatory Policies Act (PURPA), 16 U.S.C. § 824a–3(a), which requires electric utilities to purchase electricity from small power generating facilities, now made it worthwhile for Swanson to resume operation of its facility. Swanson proposed to restore and rehabilitate its facility and sell the electricity generated to Pacific Gas & Electric Co. (PG & E). Part of its proposal included the installation of new aerial transmission lines to connect its powerhouse to existing PG & E lines 1000 feet away.

Prior to filing its exemption application, Swanson consulted with the relevant federal and state fish and wildlife agencies and included their comments in its application as required by FERC's regulations. *See* 18 C.F.R. § 4.107(e)(3) (1981). Important for purposes of this appeal were certain comments by the Resources Agency of California and the California Department of Fish and Game. Both agencies noted that the Wild and Scenic Rivers Act barred FERC's issuance of an exemption for Swanson's proposed construction. Each agency then went on to set forth conditions which it considered necessary to protect fish and wildlife should FERC determine that it could license the project. Joint Appendix ("J.A.") at 43, 63. First, the Resources Agency of California required that the water used to generate power be returned upstream to Madden Creek. Swanson's proposal would channel this water directly into the South Fork of the Trinity River. Second, both agencies proposed certain

"minimum streamflows" limiting the amount of water which Swanson could divert from Madden Creek.

The Commission accepted Swanson's exemption application for filing on December 21, 1981. The Commission's regulations provide that an application for an exemption will be deemed approved and granted 120 days after its acceptance for filing if FERC takes no action within that period affirmatively to grant or deny the exemption or to suspend operation of the 120-day rule. *See* 18 C.F.R. § 4.105(b) (1981). Since the Commission took no action on Swanson's application, Swanson's exemption was automatically granted as of April 20, 1982. Swanson's exemption contained both the conditions proposed by the Resources Agency and the California Department of Fish and Game.

Swanson filed a timely petition for rehearing, *see* 18 C.F.R. § 1.34 (1982), challenging these two conditions contained in its exemption. On August 30, 1982, the Commission issued its Order on Appeal affirming the minimum streamflows condition but eliminating the requirement that Swanson return the water for the project to Madden Creek. *See Swanson Mining Corporation,* 20 F.E.R.C. ¶ 61,229 (1982). The Commission revoked the latter requirement on the ground that the Resources Agency's sole explanation for the condition was that "the project establishes a precedent." The Commission noted that while section 408 of the Energy Security Act gives fish and wildlife agencies authority to establish binding exemption conditions for preserving fish and wildlife, that section does not authorize such an agency to impose conditions not related to a project's environmental impact but only to its potential harm as precedent for later development proposals.

Swanson filed a second timely petition for rehearing challenging the continued imposition of the minimum streamflows re-

---

ditches to the powerhouse where it is used to generate electricity. The spent water (called the "tailrace") then empties into the South Fork 600

yards downstream from the confluence of Madden Creek and the South Fork.

quirement. While this petition was under consideration, the Resources Agency filed a petition for late intervention stating that FERC had misconstrued its earlier comments on Swanson's exemption application and arguing that the Wild and Scenic Rivers Act prohibited FERC from issuing an exemption for Swanson's project because that project was on or directly affecting a wild and scenic river.

The Commission granted the Resources Agency's petition for late intervention on February 22, 1983, and vacated Swanson's exemption. *See Swanson Mining Corporation*, 22 F.E.R.C. ¶ 61,184 (1983). The Commission concluded that it was without authority to approve the project proposed in Swanson's exemption application because of the project's impact on a wild and scenic river.

Swanson challenged this order on both substantive and procedural grounds. In its Order Denying Rehearing, FERC explained that although it could not accept a late petition for rehearing, it was empowered during consideration of Swanson's timely petition for rehearing to consider *sua sponte* any relevant issue which the Commission considered in the public interest, no matter how the issue came to the Commission's attention. *See Swanson Mining Corporation*, 30 F.E.R.C. ¶ 61,109, at p. 61,200 n. 3 (1985).

The Commission then went on to affirm its previous order vacating Swanson's exemption, though on somewhat different grounds than those set forth in its original order vacating Swanson's exemption. Whereas the Commission originally relied on the determination by the Resources Agency that the project was on or directly affecting a wild and scenic river, in its order denying rehearing the Commission rested on a similar determination made by the Secretary of the Interior. The Commission had requested the Secretary of the Interior to make this determination after FERC had already issued its original order vacating Swanson's exemption. In making its request to the Secretary of the Interior, FERC acted in accordance with *China Flat*

*Company*, 27 F.E.R.C. ¶ 61,024 (1984), in which the Commission interpreted the Wild and Scenic Rivers Act to vest the Secretary of the Interior or the Secretary of Agriculture with responsibility for determining whether a project is "on or directly affecting" a wild and scenic river. The Commission then explained that since the Secretary of the Interior had determined that Swanson's project had a direct effect on the South Fork of the Trinity River, the Commission had no jurisdiction to grant Swanson's exemption.

## II. ANALYSIS

Swanson challenges FERC's vacation of its exemption on three grounds. First, Swanson argues that at the time the Commission tried to revoke the exemption, it had become final by operation of law and therefore FERC lacked authority to vacate it. Second, Swanson challenges FERC's interpretation and application of the Wild and Scenic Rivers Act to ban FERC's issuance of an exemption for the renovation and operation of its hydroelectric project. Finally, Swanson alleges several procedural violations which it claims vitiated the Commission's decision to vacate its exemption. We find each of these contentions meritless.

### A. *Reviewability of the Exemption Grant*

■ Swanson argues first that its original exemption became final and nonreviewable thirty days after FERC's original grant. The Commission's regulations provide that any party may petition the Commission for rehearing within thirty days after an application for an exemption has been granted. *See* 18 C.F.R. § 1.34 (1982). If no petition is filed within that period, judicial review of the exemption grant also becomes unavailable. *See* 16 U.S.C. § 825*l* (a). Moreover, if no petition for rehearing is filed within that thirty-day period, FERC itself lacks authority to revoke the exemption except as specifically authorized by its own revocation procedures. *See, e.g., Hirschey v. FERC*, 701 F.2d 215, 218 (D.C.Cir. 1983).

These unassailable principles do not, however, preclude FERC from reconsidering Swanson's exemption. Swanson's reliance on *Hirschey v. FERC*, 701 F.2d 215 (D.C.Cir.1983), and *International Paper Company v. FERC*, 737 F.2d 1159 (D.C. Cir.1984), is misplaced. Those cases held that FERC lacked authority to vacate an exemption when no party had filed a petition for rehearing within the statutory period for rehearing. In the instant case, on the other hand, Swanson itself filed a timely petition for rehearing of each of the Commission's orders.[3] Swanson's exemption thus never became "final." Although Swanson argues that it contested only two specific conditions in its exemption and therefore its petition did not permit FERC to vacate Swanson's entire exemption, we find the law to be otherwise. Swanson assumes that the two conditions it objected to are severable from FERC's decision to grant an exemption. This assumption is wrong. The two challenged conditions which had been imposed at the request of the state agencies lay at the core of FERC's decision to issue an exemption. In fact, FERC was statutorily barred from issuing the exemption unless the exemption incorporated all conditions proposed by the state agencies as necessary to protect fish, wildlife and other environmental concerns. *See* 16 U.S.C. § 2705(d). In challenging these two conditions, therefore, Swanson itself opened the way for reconsideration of the environmental concerns which control the application of the Wild and Scenic Rivers Act. *Cf. City of Batavia v. FERC*, 672 F.2d 64, 72 n. 15 (D.C.Cir.1982) (where some issues which might have been raised in an earlier appeal to the court are so inextricably linked to a subsequent agency opinion on another aspect of the same case, 16 U.S.C. § 825*l* (b) does not preclude court from considering those issues in a timely appeal from the second opinion).

We find, in sum, that Swanson's exemption never became "final" and thus "unreviewable" under 16 U.S.C. § 825*l* (a) and the principles articulated in *Hirschey* and *International Paper*. The Commission in fact had explicit congressional authority to set aside Swanson's exemption. Section 313(a) of the Federal Power Act provides that: "[u]ntil the record in a proceeding shall have been filed in a court of appeals ... the Commission may at any time, upon reasonable notice and in such a manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter." 16 U.S.C. § 825*l* (a). As this court has several times explained, this provision enables FERC to correct an order until the time for filing a petition for judicial review has expired. *See Hirschey*, 701 F.2d at 218; *Pan American Petroleum Corporation v. FPC*, 322 F.2d 999, 1004 (D.C.Cir.), *cert. denied*, 375 U.S. 941 (1963). In *Hirschey* and *International Paper*, relied on by Swanson, the time for filing a petition for judicial review expired at the same time as the thirty-day period in which to petition the Commission for rehearing. This unusual coincidence occurred because the parties' failure to seek rehearing from the Commission also precluded any request by the parties for judicial review. *See* 16 U.S.C. § 825*l* (a). In the instant case, Swanson did petition for rehearing, so the period for seeking judicial review of FERC's decision would not expire until sixty days after the final order of the Commission upon any application for rehearing. The Commission vacated Swanson's exemption well within that time period.

B. *The Wild and Scenic Rivers Act*

1. *The Commission's Interpretation of Section 7(a)*

■ Swanson also argues on appeal that FERC erred in interpreting and applying

---

**3.** Because Swanson itself petitioned for rehearing, this court need not address today the complicated issue of whether the Commission might vacate an exemption even in the absence of a rehearing petition when the Commission has granted an exemption in clear violation of the congressional mandate contained in the Wild and Scenic Rivers Act. *Hirschey* and *International Paper* leave this issue open because those cases involved the Commission's attempt to vacate an exemption based on a reassessment of a "purely discretionary matter." *See Hirschey v. FERC*, 701 F.2d at 219.

the Wild and Scenic Rivers Act so as to bar Swanson's renovation and operation of its hydroelectric project. Swanson asserts that the Wild and Scenic Rivers Act precludes issuance of its exemption only if its project would have an adverse effect on scenic values. This argument contradicts the plain language of the statute as well as its legislative history.

Section 7(a) of the Wild and Scenic Rivers Act imposes two distinct restrictions on the powers of different federal agencies. The first clause of section 7(a) applies only to FERC. It states that FERC "shall not license the construction of any dam, water conduit, reservoir, powerhouse, transmission line, or other project works under the Federal Power Act ... on or directly affecting" any component of the national wild and scenic rivers system. 16 U.S.C. § 1278(a). The second clause of section 7(a) applies more generally. It provides that "no department or agency of the United States shall assist by loan, grant, license, or otherwise in the construction of any water resources project that would have a direct and adverse effect on the values for which such river was established...." *Id.* In section 7(a), Congress clearly intended to impose unique limitations on the powers of FERC beyond those imposed on the powers of other federal agencies. FERC is the only federal agency governed by both clauses in the first sentence of section 7(a). The first clause must therefore impose additional restrictions, for otherwise, it would be completely unnecessary. Congress would not have provided two separate clauses governing construction on wild and scenic rivers if the restrictions on FERC were the same as the restrictions on other agencies. The congressional decision to impose added limitations on the powers of FERC makes good sense,

as almost all of FERC's activities under Part I of the Federal Power Act will involve an adverse impact on the preservation of rivers in their natural state.

The restrictions on FERC differ from the restrictions on other agencies in two ways. First, Congress restricted FERC from licensing any construction "on or directly affecting" a wild and scenic river while permitting other agencies to assist in the construction of a water resources project unless the project had "a direct and adverse effect on the values for which such river was established." Second, Congress limited the ability of all agencies, including FERC, to assist in the construction of "water resources projects" while specifying that FERC additionally could not license construction of "any dam, water conduit, reservoir, powerhouse, transmission line, or other project works." Congress thus limited FERC's ability not merely to license construction of entire hydroelectric projects but also to license construction of the separate components of such an endeavor. Because we find these more stringent limitations on FERC's licensing power clearly expressed in both the words of the statute and its legislative history, *see, e.g.,* 114 Cong.Rec. 28,313 (1968) (section-by-section analysis), we cannot accept Swanson's construction of the Wild and Scenic Rivers Act as prohibiting FERC's issuance of an exemption only if a project impairs the scenic values for which the South Fork was designated. This interpretation of the statute ignores the additional restrictions imposed on FERC by the first clause of section 7(a). Swanson's attempt to read section 7(a) as limiting FERC's issuance of an exemption only when a hydroelectric project has a direct and adverse impact on a wild and scenic river renders superfluous the entire first clause of section 7(a).[4] We therefore

---

4. We also reject Swanson's contention that FERC's interpretation of the Wild and Scenic Rivers Act amounts to retroactive legislation which destroyed its valuable property rights. There is simply nothing retroactive about this application of the Wild and Scenic Rivers Act. Swanson's previous license for a project at this site expired in 1965. Swanson was therefore

obligated by the terms of the Federal Power Act to apply for a new license. The Wild and Scenic Rivers Act merely restricts FERC's ability to issue that new license. Swanson's argument conflates the existence of the components of its hydroelectric project with the existence of a license for that project. That Swanson's original project was completed in 1938 does not

find Swanson's construction unpersuasive. The Wild and Scenic Rivers Act prohibited FERC from issuing an exemption for construction "on or directly affecting" a wild and scenic river as well as construction having an "adverse effect" on scenic values.

2. *The Alleged Denial of a Hearing*

Swanson also claims that the determination that the Wild and Scenic Rivers Act precluded issuance of its exemption deprived Swanson of property without due process of law. Swanson raises two distinct due process arguments on appeal. First Swanson argues that it was entitled to a full-fledged adversarial hearing on the original determination that the Wild and Scenic Rivers Act barred FERC from issuing an exemption for Swanson's project. Second Swanson argues that FERC acted unfairly both in seeking and in relying on a determination by the Secretary of the Interior *after* FERC had already vacated Swanson's exemption on the basis of its own determination and the determination of the Resources Agency of California that an exemption would be inconsistent with the Wild and Scenic Rivers Act.

■ Swanson's contention that it was entitled under the Due Process Clause to a full evidentiary hearing prior to FERC's original determination that the Wild and Scenic Rivers Act did not permit issuance of an exemption fails for several reasons. Most basically, Swanson has identified no property interest of which it was deprived by the Commission's action. Swanson's exemption had not become final at the time the Commission originally vacated the exemption because Swanson had petitioned for rehearing of FERC's order granting the exemption. Even assuming that Swanson

had some inchoate property interest in its prospective license, we find that Swanson had adequate notice and ample opportunity to be heard on the issue of the applicability of the Wild and Scenic Rivers Act. The California Department of Fish and Game first raised this issue in a letter of November 12, 1981, included in Swanson's original application. *See* J.A. at 43. Swanson thus had notice that the Wild and Scenic Rivers Act could preclude FERC's issuance of an exemption, yet Swanson never availed itself of the opportunity to explain in its original application why the Act did not forbid issuance of an exemption for its project. The Commission's regulations explicitly require an applicant for an exemption to consult with state agencies, yet Swanson never contested any factual determination that its project was within the boundaries of a wild and scenic river. Nor did Swanson in any of its petitions for rehearing or in its appeal to this court dispute the factual circumstances on which FERC predicated its conclusion that the Wild and Scenic Rivers Act precluded issuance of an exemption to Swanson. Swanson challenged FERC's conclusion only on the ground that FERC had misinterpreted the Wild and Scenic Rivers Act, not on the ground that its powerhouse was not on the bank of the South Fork. We therefore conclude that FERC's original decision to vacate Swanson's exemption based on its determination that the Wild and Scenic Rivers Act prohibited FERC's ability to grant the exemption did not deny Swanson due process of law.

■ We also find that FERC's later decision to refer the matter of the applicability of the Wild and Scenic Rivers Act to the Secretary of the Interior[5] did not de-

suggest that the Wild and Scenic Rivers Act's restrictions on FERC's ability to issue a new exemption in 1981 constitutes unconstitutional retroactive legislation.

5. We reject Swanson's contention that the Secretary of Agriculture rather than the Secretary of the Interior was the proper party to determine whether Swanson's project was within the boundaries of a wild and scenic river. Swanson

argues that the Secretary of Agriculture is charged with administering the South Fork because a portion of the river flows through the Six Rivers National Forest. *See* 16 U.S.C. § 1275(a). This argument overlooks the fact that the South Fork is a *state-designated* component of the national wild and scenic rivers system. The Wild and Scenic Rivers Act vests the Secretary of the Interior with responsibility for such rivers. *See* 16 U.S.C. § 1273(a).

prive Swanson of property without due process of law. Swanson argues that it was entitled to notice of the Secretary of the Interior's determination and a full evidentiary hearing on the impact of its project on the values for which the South Fork was included in the national wild and scenic rivers system. In advancing this argument Swanson does not contest the interpretation of the Wild and Scenic Rivers Act announced in *China Flat Company*, 27 F.E.R.C. ¶ 61,024 (1984), that the statutory scheme gives the Secretary of the Interior or the Secretary of Agriculture rather than FERC the responsibility for determining whether a proposed hydroelectric project is consistent with the Wild and Scenic Rivers Act. Nor does Swanson contest FERC's interpretation that it lacks "jurisdiction" to issue a license if the Secretary of the Interior or the Secretary of Agriculture determines that the Wild and Scenic Rivers Act precludes issuance of an exemption. Swanson does, however, contest FERC's reliance on the determination made by the Secretary of the Interior in this case without affording Swanson the opportunity for an adversarial evidentiary hearing to contest the Secretary's conclusions. We are unpersuaded by Swanson's argument. In the first place, as discussed above, Swanson has identified no property interest of which it was deprived. Secondly, even though Swanson did not receive notice or a full opportunity to consult with the Secretary of the Interior because of the Commission's intervening decision in *China Flat Company*, Swanson suffered no prejudice. Swanson does not contest any factual determination by the Secretary of the Interior affecting the applicability of the Wild and Scenic Rivers Act. Swanson's only contention throughout has been its unpersuasive suggestion that the Act bars FERC's issuance of an exemption only if a project would have "a direct and adverse effect" on scenic values. We think under the circumstances of this case that no purpose would be served in remanding to the Commission to permit Swanson an opportunity to consult with the Secretary of the Interior.

### 3. *Applicability of the Act to Swanson's Project*

■ Swanson also argues that the Wild and Scenic Rivers Act does not apply to its exemption application because its project does not involve construction. Even though Swanson seeks an exemption for an existing hydroelectric facility, its project clearly involves construction within the meaning of the Wild and Scenic Rivers Act. The Wild and Scenic Rivers Act prohibits not merely the licensing of construction of an entire hydroelectric facility but also the licensing of construction of *any* component of such a project. Swanson's application for its exemption announces that Swanson would install new transmission lines to connect the powerhouse, located on the bank of the Trinity River, with previously existing PG & E powerlines. *See* J.A. at 15. The Wild and Scenic Rivers Act explicitly prohibits FERC from licensing the construction of such transmission lines. Swanson's exemption application also proposed to construct "a draft tube to return water to river level and absorb energy remaining in the tailwater before its discharge to the South Fork." J.A. at 20. Swanson therefore cannot credibly claim that its project did not involve "construction."

■ Swanson also attempts to take advantage of a provision in section 7(a) of the Wild and Scenic Rivers Act making clear that the Act's restrictions on FERC's licensing authority do not "preclude licensing of, or assistance to, developments below or above a wild, scenic or recreational river area or on any stream tributary thereto which will not invade the area or unreasonably diminish [its] scenic, recreational, and fish and wildlife values...." Swanson cannot avail itself of this more lenient standard, however, because its project is located on the bank of the South Fork of the Trinity River rather than on a tributary. Although Swanson's project diverts water from Madden Creek at a point two miles from its confluence with the South Fork, Swanson's powerhouse is located along the bank of the South Fork and the spent wa-

ter from the project empties directly into the South Fork.

## C. *FERC's Purported Procedural Violations*

On appeal Swanson also alleges that the Commission committed a plethora of procedural violations which undermine its order vacating Swanson's exemption and amounted to a denial of due process of law. We find these numerous contentions without merit. Swanson first argues that the Resources Agency of California did not submit a proper petition for late intervention. Under FERC's regulations, an untimely motion to intervene must "show good cause why the time limitation should be waived." *See* 18 C.F.R. § 385.214(b)(3) (1985). Swanson alleges that the Resources Agency's petition failed to set forth specific facts demonstrating why it was unable to file a timely petition for intervention. This, however, is not the sole component of good cause under FERC's rules. *Cf. Consolidated Gas Supply Corporation*, 20 F.E.R.C. ¶ 61,305 (1982) (reason for untimeliness of petition to intervene not the sole determining factor). In the instant case, FERC properly found that late intervention was "necessary to protect the public interest" and granted late intervention to enable the Resources Agency of California to exercise its statutorily recognized duty to protect fish, wildlife and other environmental concerns. *See* 22 F.E.R.C. ¶ 61,184, at p. 61,319 (1983).

Swanson next argues that the Resources Agency violated FERC's Rule 2010, 18 C.F.R. § 385.2010 (1985), by failing to serve Swanson with a copy of its letter requesting late intervention. According to Swanson "the failure by the Resources Agency to so serve SWANSON constitutes a denial of Due Process." Petitioners' Brief at 21. As we have observed earlier, no property right giving rise to due process entitlements is at issue here. Moreover, the Commission itself was not in violation of any agency rule. Under the Commission's rules, the Commission is obligated to ensure service of copies of any

"complaints" it receives, *see* 18 C.F.R. § 385.2010(b) (1985), but the Resources Agency's petition for late intervention does not constitute a "complaint" within the meaning of FERC's regulations, *see* 16 U.S.C. § 825e.

Swanson next asserts that FERC had no authority to reconsider its grant of an exemption based on the Resources Agency's petition. This argument erroneously assumes that FERC treated the Resources Agency's letter as a petition for rehearing. The Commission, however, explicitly denied that it treated the Resources Agency's letter as a petition for rehearing. *See Swanson Mining Corporation*, 30 F.E.R.C. ¶ 61,109, at p. 61,200 n. 3 (1985). The Commission instead reconsidered Swanson's exemption based on Swanson's own timely petition for rehearing. In reconsidering Swanson's exemption the Commission certainly did consider the effect of the Wild and Scenic Rivers Act, an issue raised by the Resources Agency in its petition for late intervention. The Commission was entitled, however, to consider any issues raised by Swanson's rehearing petition, including the effect of the Wild and Scenic Rivers Act. The applicability of the Wild and Scenic Rivers Act had been an issue since November of 1981, when the California Department of Fish and Game first informed Swanson and FERC that the Act precluded FERC from issuing an exemption for Swanson's project. The letter of the Resources Agency merely repeated these earlier comments made to both Swanson and FERC. In short, Swanson's argument rests on a fundamental misconception: Swanson assumes that its own rehearing petition did not put the validity of the entire exemption grant at issue. As explained above, however, we think the conditions challenged by Swanson in its petitions for rehearing did implicate FERC's original decision to grant the exemption.

Swanson also erroneously assumes that FERC was obligated to provide it with an additional opportunity to be heard prior

to FERC's determination on rehearing to vacate Swanson's exemption. When the Commission receives an application for rehearing, however, it has "power to grant or deny rehearing or to abrogate or modify its order *without further hearing.*" 16 U.S.C. § 825*l* (a) (emphasis added). Swanson's argument therefore fails.

■ Finally, Swanson contends that FERC's failure to afford it an evidentiary hearing to contest the minimum streamflows condition contained in its exemption deprived it of property without due process of law. This contention is patently without merit. Swanson was petitioning for an exemption to permit it to operate a hydroelectric facility. Because Swanson possessed no license or exemption, the minimum flows requirement can hardly be said to have deprived it of a property right. Moreover, the language of the Energy Security Act makes clear that FERC *must* include in an exemption any condition which a state agency determines to be appropriate to protect fish, wildlife and other environmental concerns. *See* 16 U.S.C. § 2705(d). Nor can Swanson credibly contend that it lacked notice or an opportunity to participate in the formulation of these conditions. The Commission's procedures for applying for an exemption require an applicant to consult with state agencies concerning these very environmental conditions. Finally, if Swanson wished a full adversarial hearing on these conditions it could opt to pursue FERC's full licensing process instead of taking advantage of the expedited procedures provided by the Energy Security Act.

CONCLUSION

We have considered the numerous challenges raised by Swanson Mining Corporation and Walter M. Gleason to FERC's decision to vacate its exemption, and we find no merit in petitioners' assorted contentions. Accordingly, Swanson's petition for review of FERC's orders is

*Denied.*