**Teresa A. GRIFFITH, now Rankin, Appellant,**

v.

**Steve R. GRIFFITH, Appellee.**

**No. 59190.**

Supreme Court of Oklahoma.

Dec. 16, 1986.

Gary W. Dart, Legal Aid of Western Oklahoma, Inc., for appellant.

Carl Hughes, Oklahoma City, for appellee.

### MEMORANDUM OPINION

SIMMS, Chief Justice.

The trial court's judgment terminating mother's parental rights based upon grounds of 10 O.S.1981, § 1130(A)(4) is reversed. The statute was invoked and applied during proceedings which were plainly private, a post-divorce interparental contest. Our holding in *Davis v. Davis*, Okl., 708 P.2d 1102 (1985) establishes the rule that application of 10 O.S.1981, § 1130(A)(4) is limited to actions brought by the state. A § 1130 termination may be sought only by the state and only simultaneously with or after a prior adjudication of a child's deprived status. *Davis*, supra.

The father had no standing to invoke the provisions of 10 O.S.1981, § 1130, and the trial court erred in proceeding on that ground and entering its order based upon that statute.

Appellant mother was not under a court order requiring her to support the children. On September 8, 1982, at the hearing from which the challenged order was issued, the trial court had before it two motions filed by appellee father, one to establish child support by mother, and one to terminate her parental rights under § 1130 for failure to support. At the hearing, father announced that he was "electing" to proceed only on the petition to terminate.

That hearing proceeded over objections by appellant. The record shows that appellee father admitted that during the preceeding year, mother had furnished clothing, gifts and toys during visitation and that financial support had not been needed or requested. The trial court nonetheless found that appellant mother had "wilfully failed" to support the children and terminated her parental rights. This judgment was not based upon a finding by the court that termination would be in the best interests of the children. Appellant mother's additional challenges to the correctness of the trial court's judgment for insufficiency of the evidence to support the finding of "wilful failure" are also well-taken. *Matter of Adoption of C.M.G.*, Okl., 656 P.2d 262 (1982).

■ The validity of 10 O.S.Supp.1986, § 1130(D), (Senate Bill No. 447, effective June 12, 1986), is not before us now. However, the application of that provision is prospective only. Legislative history materials *unmistakably* demonstrate that the SB–477 abrogation *was intended* by the legislature to be prospective in its effect— i.e. to run from and after the effective date of the Act. A proviso that would have explicitly given the SB–477 abrogation a fully retroactive sweep and would have made it apply "to terminations of parental rights heretofore granted by any court in this state" was rejected in the House of Representatives by a vote cast on May 27, 1986. Obedience to clear legislative intent and respect for "accrued rights" acquired through past adjudications which are protected by Art. 5, § 54, Okl. Const., mandate that the termination order under review here be reversed with directions to dismiss the parental termination proceedings below.

The order of the trial court terminating the rights of appellant mother to her children is accordingly REVERSED. *Davis v. Davis*, supra; *Yarborough v. Yarborough*, Okl., 708 P.2d 1100 (1985).

DOOLIN, V.C.J., and LAVENDER, HARGRAVE, OPALA and SUMMERS, JJ., concur.

HODGES and KAUGER, JJ., concur in part; dissent in part.

WILSON, J., concurs in result only, but dissents to application of *Davis v. Davis*.

ALMA WILSON, Justice, concurring in result; but dissenting to the application of *Davis v. Davis*, 708 P.2d 1102 (Okl.1985):

I concur in result because the record discloses *absolutely no evidence* was presented at the trial of this case to establish that the mother of these children ever *willfully* refused to contribute to the support of her children. Indeed, the evidence was that this mother had never been asked for any financial support; but that she nevertheless furnished clothing, gifts and toys to her children during her visitation with them. According to the evidence alone, the trial court abused its discretion and did not act within the best interests of these minor, dependent children by forever removing from them the benefit of their mother's love, affection, companionship and support.

This is not to say, however, that termination of parental rights is never within the best interests of minor, dependent children or that a trial court is precluded from terminating the parental rights of a non-supporting parent, under appropriate circumstances, and *upon the petition of the*

*child's custodial parent.* As unanimously stated by this Court in *Mullins v. Mullins,* 606 P.2d 573 (Okl.1980):

"A child may be receiving excellent care from the custodial parent, while the noncustodial parent refuses to obey a court order to contribute to the child's support. It would be ludicrous and perhaps impossible to require a determination of deprivation or delinquency under these circumstances, and the irresponsible parent would not only be able to escape his responsibilities, but continue to enjoy the benefits of parenthood, including visitation, rights of inheritance and rights to the childrens' earning. Such a result would not only be inequitable and unconscionable, it would violate the statute."

Title 10 O.S.1981 § 1130(A)(4), in force at the time here involved, (the viability of which presently remains unaltered), provides:

§ 1130. *Termination of parental rights in certain situations*

A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court *may* terminate the rights of a parent to a child *in the following situations:*

.   .   .     .     .     .

4. A finding that a parent who does not have custody of the child has *willfully* failed to contribute to the support of the child as provided in a decree of divorce or in some other court order during the preceding year or, in the absence of such order consistent with the parent's means and earning capacity; ... [*Emphasis mine.*]

Our Legislature, pursuant to paragraph 4, *above,* has authorized that a trial court "may", (permissive not mandatory), in the exercise of sound judicial discretion considering all the circumstances, terminate the parental rights of a non-custodial parent who *willfully* fails to contribute to the support of the child. The identical paragraph 4 remains on the books unchanged. The fact that our Legislature, in its wisdom, has enacted supplementary procedural clarification in a separate paragraph serves not to defeat, but to facilitate the true substantive legislative intent. Prior to *Davis v. Davis,* 708 P.2d 1102 (Okl.1985), pre-existing case law declined to exclude a child's custodial parent or guardian from invoking paragraph 4 of § 1130 on behalf of the child. *Mullins v. Mullins, supra. Davis,* to my view, represents an isolated departure from established procedure in this jurisdiction and therefore should not be followed. I would limit its effect to the "law of the case", especially so considering that the Legislature has now clarified the pre-existing intent of § 1130.

The Juvenile Code was enacted to protect the best interests of the children of this state. *See,* 10 O.S.1984 Supp. § 1129. Enforcement of a child's individual right to receive support from a non-custodial parent serves this objective. The child's custodial parent or guardian is the obvious and logical party to proceed on behalf of the dependent child. While the state, under proper circumstances, may proceed as parens patriae, it is not in all cases a necessary party.

KAUGER Justice, dissenting, only to the reliance on *Davis v. Davis,* 708 P.2d 1102, 1107 (Okla.1985).

In *Davis,* this Court recognized that parental rights could be terminated for a parent's wilful refusal to support the child. However, *Davis* authorized a procedure whereby only the district attorney had standing to bring such a case under the Juvenile Code, 10 O.S.1981 §§ 1109(C), 1130. In an immediate response to *Davis,* the Legislature amended § 1130 negating the Davis doctrine and providing that a parent or guardian of a child may petition the court to terminate parental rights.

No person has a vested right in any particular mode of procedure, and in the absence of an expression of contrary intent, a procedural statute applies to all actions within its purview whether the right accrues before or after the statutory

enactment.[1] A procedural change is one which affects the remedy rather than the right.[2] The amendments to the Juvenile Code affect the remedy by permitting a private person as well as the district attorney to utilize its provisions, in effect, eliminating the middleman from the proceedings. The amended statute should be given retroactive application.

The legislative history upon which the majority relies is a six person committee report of S.B. 477 with the title stricken. I believe, as did then—Judge Scalia (since elevated to the United States Supreme Court), concurring in *Hirschey v. F.E.R.C.*, 777 F.2d 1, 7 (D.C.Cir.1985), that judicial deference to this committee report, which is as a practical matter irretrieveable to the average citizen, converts a system of judicial construction into a system of committee prescription. The majority opinion states that the retroactivity proviso was rejected by a vote of the House of Representatives on May 27, 1986. Closer scrutiny of the "legislative history relied upon by the majority discloses a far different scenario."

The conference committee report of May 8, 1986, providing for retroactivity was presented to the Senate on May 12, 1986; S.B. 477 passed 42 to 6. After S.B. 477 was sent to the House of Representatives, on May 22, 1986, the House was unable to obtain a majority vote and on a division of question the bill was sent back to the committee with instructions on that date. The amended bill was presented again, June 4, 1986, to the Senate, and June 10, 1986, to the House; however, when the bill was presented to each of the Chambers, *the deleted language was neither included nor shown to be stricken*—as a matter of practice only the deleted statutory language is delineated. The Legislature recessed on May 22, 1986; reconvened on May 27, 1986; and adjourned June 12, 1986. Thus, it is equally plausible that in the rush to adjournment the Legislature, voting on the final version of the bill, could have been unaware that they were rejecting the retroactivity proviso, as the majority implies.[3]

Here, the question should be resolved on the facts (which incidentally do not support termination of parental rights). It should not be decided on the basis of what the committee report said, but on the basis of what we judge to be the most rational construction of the amendment. It is inappropriate as a general rule, and in this case in particular, to regard committee reports as having been drafted more meticulously or as reflecting more accurately the legislative intent than the statutory enactment.[4] Because this is a procedural statute, language providing for retroactivity would be redundant.

ALMA WILSON, J. joins.

---

1. *Okla. Water Resources Bd. v. Central Okla. Master Conservancy Dist.*, 464 P.2d 748, 756 (Okla.1969); *Shelby-Downard Asphalt Co. v. Enyart*, 67 Okl. 237, 170 P. 708, 709 (1918).

2. *Trinity Broadcasting Co. v. Leeco Oil Co.*, 692 P.2d 1364, 1367 (Okla.1984).

3. As Judge Scalia stated in his concurrence in *Hirschey v. F.E.R.C.*, 777 F.2d 1, 7 (D.C.Cir. 1985), "I frankly doubt that it is ever reasonable to assume that the details, as opposed to the broad outlines of purpose set forth in a committee report come to the attention of, much less are approved by the house which enacts the committee's bill."

4. *Abourezk v. Reagan*, 785 F.2d 1043, 1045–55 (D.C.Cir.1986).