CARNES, Circuit Judge,
concurring:
I join the judgment of this Court and all of the majority’s opinion, except its statements equating a committee of the House of Representatives with the entire Congress. In one place the opinion says that Congress “expressly stated its intention” about the willfulness requirement of the Child Support Recovery Act in the report of the House Judiciary Committee about that legislation. Maj. Op. at 1331. In another place the opinion refers to what “Congress has indicated” and it does so in a way that appears to equate the House Judiciary Committee with Congress. Maj. Op. at 1331-32.
No committee of either house of Congress is the whole of it, and no committee of either house speaks for the legislative branch or all of its members, or even for a majority of them. The reports of committees are not instructions or statements from Congress. They are not part of the law. When the meaning of a statute is unclear and resort to the usual canons of construction does not provide the answer, courts sometimes consult congressional committee reports for evidence of the meaning of the problematic language. That we do so is a reflection of our desire to consider all possible sources of information; it is not a testament to the reliability of committee reports as indicators of the intent of the whole legislative body.
For one thing, there often will not be a common congressional intent behind ambiguous language. The problem with a statute’s wording and the issue that wording presents may not have been recognized and brought up for discussion while the bill was being considered, or the language may have been deliberately engineered for ambiguity in order to paper over disagreement about an issue. Even when a committee report explicitly recognizes and addresses a problem created by a bill’s language, the report is not always a reliable indicator of congressional intent. In the best case scenario a committee report may indicate what a majority of that *1334 committee’s members thought about a particular issue that was less than artfully addressed in the bill itself, but in many cases the report indicates only what a few members, or some staffers, or some lobbyists, thought or wished the language of the bill meant.
For an illustration of why we should not view committee reports as instructions from Congress, one can hardly do better than this enlightening exchange between two senators, quoted in an opinion that Justice Scalia wrote when he was on the D.C. Circuit Court of Appeals:
Mr. ARMSTRONG .... My question, which may take [the chairman of the Committee on Finance] by surprise, is this: Is it the intention of the chairman that the Internal Revenue Service and the Tax Court and other courts take guidance as to the intention of Congress from the committee report which accompanies this bill?
Mr. DOLE. I would certainly hope so
Mr. ARMSTRONG. Mr. President, will the Senator tell me whether or not he wrote the committee report?
Mr. DOLE. Did I write the committee report?
Mr. ARMSTRONG. Yes.
Mr. DOLE. No; the Senator from Kansas did not write the committee report.
Mr. ARMSTRONG. Did any Senator write the committee report?
Mr. DOLE. I have to check.
Mr. ARMSTRONG. Does the Senator know of any Senator who wrote the committee report?
Mr. DOLE. I might be able to identify one, but I would have to search. I was here all during the time it was written, I might say, and worked carefully with the staff as they worked ....
Mr. ARMSTRONG. Mr. President, has the Senator from Kansas, the chairman of the Finance Committee, read the committee report in its entirety?
Mr. DOLE. I am working on it. It is not a bestseller, but I am working on it.
Mr. ARMSTRONG. Mr. President, did members of the Finance Committee vote on the committee report?
Mr. DOLE. No.
Mr. ARMSTRONG. Mr. President, the reason I raise the issue is not perhaps apparent on the surface, and let me just state it: .... The report itself is not considered by the Committee on Finance. It was not subject to amendment by the Committee on Finance. It is not subject to amendment now by the Senate.
... If there were matter within this report which was disagreed to by the Senator from Colorado or even by a majority of all Senators, there would be no way for us to change the report. I could not offer an amendment tonight to amend the committee report.
... [F]or any jurist, administrator, bureaucrat, tax practitioner, or others who might chance upon the written record of this proceeding, let me just make the point that this is not the law, it was not voted on, it is not subject to amendment, and we should discipline ourselves to the task of expressing congressional intent in the statute.
Hirschey v. F.E.R.C., 777 F.2d 1, 7 n. 1 (D.C.Cir.1985) (Scalia, J., concurring) (quoting 128 Cong. Rec. S8659 (daily ed. July 19,1982)) (alterations in original).
We should never forget that the law is what the statute itself says, after it is approved by both houses of the legislature and signed by the President. Aldridge v. Williams, 44 U.S. (3 How.) 9, 24, 11 L.Ed. 469 (1845) (“The law as it passed is the will of the majority of both houses, and the *1335 only mode in which that will is spoken is in the act itself ... .”)• Committee reports are not voted on by the house in which they originate, much less by the other house; they are not statements from Congress as a whole; they are not signed into law by the President; they are not the law.